## <u>EXHIBIT A</u>

**The Amended Plan**

Gregory M. Juell
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: gregory.juell@us.dlapiper.com

Rachel Nanes (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131-5341
Telephone: (305) 423-8500
Facsimile: (305) 437-8131
Email: rachel.nanes@us.dlapiper.com

James P. Muenker (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
Email: james.muenker@us.dlapiper.com

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC., d/b/a THE HARBORSIDE, | Case No. 23-70989 (AST) |
| Debtor. | |

**DEBTOR'S AMENDED PLAN OF LIQUIDATION PURSUANT TO**
**CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated:  March 27, 2025

## TABLE OF CONTENTS

Page

**SECTION 1. DEFINITIONS AND INTERPRETATION**..................................................................1

    1.1     Definitions...........................................................................................................1

    1.2     Interpretation, Application of Definitions and Rules of Construction......................13

    1.3     Computation of Time .........................................................................................13

**SECTION 2. ADMINISTRATIVE AND PRIORITY CLAIMS** ...............................................14

    2.1     Administrative Expense Claims..........................................................................14

    2.2     Accrued Professional Compensation Claims.......................................................14

    2.3     Priority Tax Claims............................................................................................15

    2.4     DIP Claims.......................................................................................................15

    2.5     Diminution Claim .............................................................................................15

**SECTION 3. CLASSIFICATION OF CLAIMS AND INTERESTS**..........................................15

**SECTION 4. TREATMENT OF CLAIMS AND INTERESTS** ................................................16

    4.1     Other Priority Claims (Class 1)..........................................................................16

    4.2     Other Secured Claims (Class 2)..........................................................................16

    4.3     Bondholder Secured Claims (Class 3) .................................................................16

    4.4     Bondholder Deficiency Claims (Class 4)..............................................................17

    4.5     Pre-Termination Resident Claims (Class 5)..........................................................17

    4.6     Post-Termination Resident Claims (Class 6) ........................................................17

    4.7     General Unsecured Claims (Class 7) ...................................................................17

    4.8     Interests in the Debtor (Class 8).........................................................................18

**SECTION 5. CRAMDOWN.** ................................................................................................18

**SECTION 6. MEANS FOR IMPLEMENTATION OF THE PLAN.**........................................18

    6.1     Settlement ........................................................................................................18

    6.2     Liquidating Trust ..............................................................................................18

**SECTION 7. DISTRIBUTIONS**..........................................................................................24

    7.1     Distribution Record Date ...................................................................................24

    7.2     Date of Distributions .........................................................................................24

    7.3     Disbursing Agent ..............................................................................................25

    7.4     Rights and Powers of Disbursing Agent ..............................................................25

    7.5     Delivery of Distributions in General....................................................................25

    7.6     Payments and Distributions on Disputed Claims..................................................25

    7.7     Manner of Payment...........................................................................................25

    7.8     Undeliverable Distributions and Unclaimed Property .............................................26

7.9 Withholding and Reporting Requirements ........................................................26

7.10 [Reserved] ....................................................................................................26

7.11 Setoffs ..........................................................................................................26

7.12 Insurance Claims ..........................................................................................26

7.13 Applicability of Insurance Policies ..............................................................26

7.14 No Postpetition Interest ................................................................................27

7.15 Allocation of Distributions Between Principal and Unpaid Interest ............27

7.16 Distributions Free and Clear ........................................................................27

7.17 Fractional Dollars; De Minimis Distributions ............................................27

**SECTION 8. PROCEDURES FOR DISPUTED CLAIMS ........................................27**

8.1 Allowance of Claims and Interests ..............................................................27

8.2 Objections to Claims ....................................................................................28

8.3 Estimation of Claims ....................................................................................28

8.4 No Distribution Pending Allowance ............................................................28

8.5 Distributions after Allowance ......................................................................28

8.6 Preservations of Rights to Settle Claims......................................................29

8.7 Disallowed Claims ........................................................................................29

**SECTION 9. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................29**

9.1 Assumption and Rejection of Executory Contracts and Unexpired Leases...............29

9.2 Inclusiveness .................................................................................................29

9.3 Rejection Claims ...........................................................................................29

9.4 Cure of Defaults ............................................................................................30

9.5 Full Release and Satisfaction .......................................................................30

9.6 D&O Liability Insurance Policies ...............................................................30

9.7 Reservation of Rights....................................................................................31

**SECTION 10. CONDITIONS PRECEDENT TO CONFIRMATION AND THE
EFFECTIVE DATE ........................................................................31**

10.1 Conditions Precedent to Confirmation.........................................................31

10.2 Conditions Precedent to the Effective Date .................................................31

10.3 Waiver of Conditions....................................................................................31

10.4 Effect of Failure of Conditions ....................................................................32

**SECTION 11. EFFECT OF CONFIRMATION ........................................................32**

11.1 Immediate Binding Effect.............................................................................32

11.2 Compromise and Settlement of Claims, Interests and Controversies .........32

11.3 Releases by the Debtor..................................................................................32

| | | |
|---|---|---|
| 11.4 | Releases by Holders of Claims | 33 |
| 11.5 | Exculpation | 34 |
| 11.6 | Injunction | 34 |
| 11.7 | Term of Injunctions or Stays | 35 |
| 11.8 | Injunction Against Interference with Plan | 36 |
| 11.9 | Release of Liens | 36 |
| 11.10 | Effectuating Documents and Further Transactions | 36 |
| 11.11 | Corporate Action | 36 |
| 11.12 | Cancellation of Agreements, Security Interests and Other Interests | 36 |
| 11.13 | Dissolution of the Debtor | 37 |
| 11.14 | Preservation of Causes of Action of the Debtor | 37 |

**SECTION 12. MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN** ........**38**

| | | |
|---|---|---|
| 12.1 | Modification and Amendments | 38 |
| 12.2 | Effect of Confirmation on Modifications | 38 |
| 12.3 | Revocation or Withdrawal of this Plan | 38 |

**SECTION 13. RETENTION OF JURISDICTION** ........**38**

**SECTION 14. MISCELLANEOUS PROVISIONS** ........**40**

| | | |
|---|---|---|
| 14.1 | Payment of Statutory Fees | 40 |
| 14.2 | Dissolution of Committee | 40 |
| 14.3 | Section 1125(e) Good Faith Compliance | 40 |
| 14.4 | Substantial Consummation | 40 |
| 14.5 | Section 1146 Exemption | 40 |
| 14.6 | Closing of the Chapter 11 Case | 41 |
| 14.7 | Plan Supplement | 41 |
| 14.8 | Further Assurances | 41 |
| 14.9 | Exhibits Incorporated | 41 |
| 14.10 | Inconsistency | 41 |
| 14.11 | No Admissions | 41 |
| 14.12 | Reservation of Rights | 42 |
| 14.13 | Successors and Assigns | 42 |
| 14.14 | Entire Agreement | 42 |
| 14.15 | Notices | 42 |
| 14.16 | Severability | 43 |
| 14.17 | Governing Law | 43 |
| 14.18 | Request for Confirmation | 43 |

## INTRODUCTION

On March 22, 2023, Amsterdam House Continuing Care Retirement Community, Inc. d/b/a The Harborside filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and rule 3019 of the Federal Rules of Bankruptcy Procedure, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this *Debtor's Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* prior to its substantial consummation. Capitalized terms used but not defined herein have the meanings ascribed to them in section 1 of this Plan.

This Plan amends the LCS Sale Plan, which provided for the orderly distribution of proceeds of the sale to LCS as approved by the Bankruptcy Court on December 23, 2023 [Dkt. No. 607] and effectuated the transactions contemplated by the global settlement agreement related to the sale to LCS that was approved pursuant to the *Order Approving Settlement and Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019* [Dkt. No. 698]. As described in greater detail in the Disclosure Statement, the sale to LCS was ultimately terminated and the Debtor pursued the transactions set forth in this Plan and the Focus Sale Global Settlement Term Sheet.

The treatment of Holders of Allowed Pre-Termination Resident Claims and Post-Termination Resident Claims set forth in section 3 of this Plan was developed by the Debtor, the Committee and the Ad Hoc Group.

Interested parties are strongly encouraged to review the Disclosure Statement for a discussion of the Debtor's history and assets, events during the Chapter 11 Case, a summary and analysis of this Plan, and the risk factors relating to consummation of this Plan.

## SECTION 1.   DEFINITIONS AND INTERPRETATION

1.1    ***Definitions***.  The following terms used herein shall have the respective meanings below:

***Acceptable Nursing Home Sale*** means the sale of substantially all of the assets of ANH pursuant to the previously executed agreements, dated as of December 18, 2020 and effective March 8, 2021, as amended, and certain related agreements (which is currently pending regulatory review and remains subject to a pending closing), or another sale transaction with respect to such assets.

***ACCHS*** means Amsterdam Continuing Care Health System, Inc.

***Accrued Professional Compensation Claim*** means, at any given time, all accrued, contingent and/or unpaid fees (including any payments owed to Continuum Advisors LLC in connection with the Sale) for legal, financial advisory, real estate brokerage and other services and obligations for reimbursement of expenses rendered or incurred before the Effective Date under sections 328, 330(a), 331 or 363 of the Bankruptcy Code by any retained Professional in the Chapter 11 Case, or under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid.

1

*Ad Hoc Group* means the ad hoc group of Residents.

*Administrative Expense Claim* means any Claim against the Debtor for costs and expenses of administration pursuant to sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (i) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Debtor's Estate and operating the business of the Debtor; (ii) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930; (iii) Claims for the value of any goods received by the Debtor within twenty (20) days before the Petition Date allowed in accordance with section 503(b)(9) of the Bankruptcy Code; and (iv) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

*Administrative Expense Claims Bar Date* means the first Business Day that is thirty (30) days after the Effective Date or such other date ordered by the Bankruptcy Court.

*Allowed* means, with reference to any Claim against the Debtor, a Claim (i) as to which no objection or request for estimation has been filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or this Plan; (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with this Plan; or (iii) that is allowed (a) by a Final Order, or (b) pursuant to the terms of this Plan; *provided, however*, that, notwithstanding anything herein to the contrary, by treating a Claim as "Allowed" under clause (i) above (the expiration of the applicable deadline), neither the Debtor nor the Liquidating Trustee waives its rights to contest the amount and validity of any disputed, contingent and/or unliquidated Claim in the time, manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced.  An Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law.  Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Case is not an Allowed Claim.  Unless otherwise specified in this Plan, in section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of Distributions under this Plan, include interest on such Claim accruing from and after the Petition Date.

*Alternative Payment* means, a Maximum Member Financial Contribution of less than $46,000,000 or any other amounts paid by ACCHS or ANH (or on their behalf) to, and accepted by, the Bond Trustee, the Liquidating Trustee or on account of any Resident Claim, as set forth in the Focus Sale Global Settlement Term Sheet.

*ANH* means Amsterdam Nursing Home Corporation (1992) d/b/a Amsterdam Nursing Home.

*Approved Budget* means the approved budget attached as <u>Exhibit 1</u> to the DIP Order, as modified from time to time.

*Assets* means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Debtor's Estate pursuant to section 541 of the Bankruptcy Code, Cash, Avoidance Actions, Causes of Action, equipment, inventory, tax refunds, claims of right,

interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing.

**Avoidance Actions** means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or the Estate under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code and under similar state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such actions or remedies.

**Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter applicable to this Chapter 11 Case.

**Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of New York having jurisdiction over the Chapter 11 Case.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

**Beneficiaries** means the beneficiaries of the Liquidating Trust, as defined in the Liquidating Trust Agreement, which shall include (i) Holders of Allowed Pre-Termination Resident Claims that are Releasing Parties, (ii) Holders of Allowed Post-Termination Resident Claims that are Releasing Parties, (iii) the Bond Trustee, on behalf of Holders of the Bondholder Secured Claims and Holders of the Bondholder Deficiency Claims, and (iv) Holders of Allowed General Unsecured Claims.

**Bond Claims** means, collectively, the Bondholder Secured Claims and the Bondholder Deficiency Claims.

**Bond Documents** means, collectively, the Bond Indenture, Mortgage and Security Agreement and any other documents entered into in connection with the Bonds.

**Bond Indenture** means that certain Indenture of Trust, dated as of September 21, 2021, by and between the Issuer and the Bond Trustee.

**Bond Trustee** means UMB Bank, N.A., in its capacity as trustee under the Bond Indenture.

**Bondholder Deficiency Claims** means the unsecured Claims of the Holders of the Bonds against the Debtor arising under, derived from, based on, or related to the Bonds and/or Bond Documents.

**Bondholder Reimbursement** means (i) if the Maximum Member Financial Contribution is $46,000,000, an amount equal to $8,800,000 plus interest at a rate of 7.5% per annum, commencing from the Sale Closing Date, or (ii) if the Maximum Member Financial Contribution is less than $46,000,000, an amount equal to 25% of such Maximum Member Financial Contribution, provided that the Bondholder Reimbursement shall not exceed $8,800,000 plus applicable interest.

**Bondholder Sale Proceeds** means Cash in an amount equal to $73,000,000 payable solely from the proceeds of the Sale.

**Bondholder Secured Claims** means the Secured Claims of the Holders of the Bonds against the Debtor arising under, derived from, based on, or related to the Bonds and/or the Bond Documents.

**Bonds** means, collectively, the Nassau County Industrial Development Agency Continuing Care Retirement Community Taxable Revenue Bonds, Series 2021A (Amsterdam at Harborside Project), and Tax-Exempt Refunding Revenue Bonds, Series 2021B (Amsterdam at Harborside Project).

**Business Day** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in New York, New York.

**Cash** means cash and cash equivalents including, without limitation, checks and wire transfers.

**Causes of Action** means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, asserted or which may be asserted by or on behalf of the Debtor and/or the Estate, including: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance Action; and (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

**Chapter 11 Case** means the Debtor's chapter 11 case pending in the Bankruptcy Court under case number 23-70989-AST.

**Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

**Class** means a class or category of Claims or Interests as classified and described in section 3 of this Plan.

**Collateral** means any property or interest in property of the Estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

**Combined Hearing** means the hearing on the adequacy of the Disclosure Statement and the confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

**Committee** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the United States Trustee on April 13, 2023.

**Confirmation Date** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket in the Chapter 11 Case.

**Confirmation Order** means the order entered by the Bankruptcy Court (i) approving the Disclosure Statement as being in compliance with section 1125 of the Bankruptcy Code and applicable non-bankruptcy law, and (ii) confirming this Plan in accordance with chapter 11 of the Bankruptcy Code.

**Consenting Bondholders** means the Holders of the Bonds that are signatories to the Focus Sale Global Settlement Term Sheet.

**Contingent Claim** means any contingent or unliquidated Claim asserted or which may be asserted against the Debtor.

**Creditor** means a Holder of a Claim.

**Cure** means the payment of Cash by Focus, as applicable, as necessary to (i) cure a monetary default by the Debtor in accordance with the terms of an Executory Contract or Unexpired Lease of the Debtor, and (ii) permit the Debtor to assume such Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code.

**D&O Liability Insurance Policies** means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued at any time to the Debtor as a first named insured providing directors', members', trustees', officers', or managers' liability coverage.

**Debtor** means Amsterdam House Continuing Care Retirement Community, Inc. d/b/a The Harborside, as debtor and Debtor in Possession, and includes the Estate.

**Debtor in Possession** means the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

**Debtor Released Claims** shall have the meaning set forth in section 11.3 of this Plan.

**Diminution Claim** means any Allowed Claim of the Bond Trustee for diminution in value of the Bond Collateral (as defined in the DIP Order), which shall equal at least the amount of the DIP Obligations.

**DIP Claims** mean all Claims against the Debtor on account of the DIP Obligations (as defined in the DIP Order).

**DIP Order** means the *Final Order (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting (A) Liens and Superpriority Claims and (B) Adequate Protection; (III) Authorizing the Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Dkt. No. 1001].

**Disallowed Claim** means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

**Disbursing Agent** means the Liquidating Trustee or such other Person designated by the Liquidating Trustee on or after the Effective Date.

**Disclosure Statement** means the *Disclosure Statement for the Debtor's Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (including all exhibits and schedules thereto or referenced therein), as may be further altered, modified amended or supplemented.

**Disputed Claim** means a Claim that has neither been Allowed nor disallowed pursuant to a Final Order of the Bankruptcy Court, and (a) if no Proof of Claim has been filed by the applicable deadline:  (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor, Liquidating Trustee, or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or (b) if a Proof of Claim or other request for payment has been filed by the applicable deadline:  (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules or Allowed in this Plan; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim or as asserted in the Proof of Claim varies from the nature and amount of such Claim as listed on the Schedules to the extent of such positive variance; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtor, the Liquidating Trustee, or any other party in interest which has not been withdrawn or determined by a Final Order.

**Distributable Net Sale Proceeds** has the meaning set forth in section 6(b) of this Plan.

**Distribution** means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

**Distribution Record Date** means five (5) Business Days prior to the Confirmation Date.

**Effective Date** means the date on which the conditions precedent specified in section 10 of this Plan have been either satisfied or waived.

**Estate** means the estate created in the Chapter 11 Case containing all property and other interests of the Debtor pursuant to section 541 of the Bankruptcy Code.

**Excluded Assets** means any Assets not sold pursuant to the Sale.

**Exculpated Claim** means any claim arising between the Petition Date and the Effective Date related to any act or omission in connection with, relating to or arising out of (i) any in-court or out-of-court forbearance or restructuring arrangement involving the Debtor and its

current and former employees, agents, representatives, advisors, consultants and attorneys, (ii) the Chapter 11 Case, (iii) the negotiation or consummation of the sales to LCS and Focus, (iv) the negotiation, administration or consummation of any cash collateral arrangement in the Chapter 11 Case, (v) the formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, including the Focus Sale Global Settlement Term Sheet, (vi) the filing of the Chapter 11 Case, (vii) the pursuit of confirmation of this Plan, (viii) the administration and implementation of this Plan, or (ix) the Distribution of property under this Plan and/or any other related agreement; *provided*, *however*, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct under applicable non-bankruptcy law.  No Cause of Action, obligation or liability expressly preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

*Exculpated Party* means each of: (i) the Debtor; (ii) the Committee and its members (each in their capacity as such); and (iii) the current officers, directors, members, managers, employees, attorneys, consultants and advisors, each in their respective capacities as such, of each of the foregoing.

*Executory Contract* means a contract to which the Debtor is a party that is capable of assumption or rejection under section 365 of the Bankruptcy Code.

*Facility* means the continuing care retirement community known as "The Harborside."

*Final Order* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, that has been entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, and, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

*Focus* means Sr Hsg Acquisitions, LLC or its assignee, solely in its capacity as purchaser pursuant to the Focus APA.

*Focus APA* means that certain Asset Purchase Agreement, dated as of January 22, 2025, as amended by that certain First Amendment to Asset Purchase Agreement, dated as of February 20, 2025, between the Debtor and Focus.

**Focus Sale Global Settlement Term Sheet** means the global settlement term sheet agreed to by and among the Debtor, Committee, Ad Hoc Group, ACCHS, ANH, Bond Trustee and the Consenting Bondholders, as approved by the Bankruptcy Court at a hearing held on March 19, 2025.

**Focus Sale Order** means the *Order (I) Approving the Asset Purchase Agreement Between the Debtor and Sr Hsg Acquisitions, LLC; (II) Authorizing the Sale of Substantially all of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, Except for Certain Permitted Liens and Assumed Liabilities; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief* [Dkt. No. 1007].

**General Unsecured Claim** means any Claim asserted against the Debtor which is not included within the other specifically defined Classes hereunder.

**Governmental Unit** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**Holder** means the legal or beneficial holder of a Claim or Interest.

**Impaired** means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of section 1124 of the Bankruptcy Code.

**Initial Post-Termination Resident Distribution** means Cash in an amount equal to (i) the Post-Termination Resident Sale Proceeds divided by the number of Residency Agreements to which one or more Post-Termination Residents is, or previously was, a party; *plus* (ii) the Post-Termination Resident Supplemental Funding divided by the number of Post-Termination Residents.

**Initial Pre-Termination Resident Distribution** means Cash in an amount equal to the Pre-Termination Resident Sale Proceeds divided by the number of Residency Agreements to which one or more Pre-Termination Residents is, or previously was, a party.

**Insurance Policies** means, collectively, all of the Debtor's insurance policies.

**Interest** means the interest of any Holder in an equity security of the Debtor, within the meaning of section 101(16) of the Bankruptcy Code represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in the Debtor.

**Issuer** means the Nassau County Industrial Development Agency.

**LCS Sale Plan** means the *Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 690], as approved by the Bankruptcy Court pursuant to the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Debtor's Disclosure*

*Statement; and (II) Confirming the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 733].

**Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**Liquidating Trust** means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

**Liquidating Trust Agreement** means the agreement, substantially in the form included in the Plan Supplement, governing the operations of the Liquidating Trust, as it may be subsequently modified from time to time.

**Liquidating Trust Assets** means the assets held in the Liquidating Trust comprised of (i) the Liquidating Trust Contribution, (ii) the Member Financial Contribution; and (iii) all Excluded Assets, including all Causes of Action of the Debtor's Estate, except for those Causes of Action expressly released or waived herein and all Remnant Assets.

**Liquidating Trust Contribution** means funding of the Liquidating Trust jointly determined by the Debtor, the Committee, Ad Hoc Group, and the Bond Trustee, each in consultation with ACCHS.

**Liquidating Trust Distributable Cash** means all Liquidating Trust Assets reduced to Cash.

**Liquidating Trust Monthly Fee Statements** shall have the meaning set forth in section 6.2(f) of this Plan.

**Liquidating Trust Professionals** shall have the meaning set forth in section 6.2(f) of this Plan.

**Liquidating Trust Reserve** shall have the meaning set forth in section 6.2(b) of this Plan.

**Liquidating Trustee** means the individual or entity, jointly selected by the Committee, the Ad Hoc Group, the Bond Trustee and the Debtor, each in consultation with ACCHS, designated and retained as the trustee to the Liquidating Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust.

**Maximum Member Financial Contribution** means the contribution of ACCHS to the Liquidating Trust in an amount equal to the lesser of (i) $46,000,000, (ii) the net proceeds of an Acceptable Nursing Home Sale, and (iii) the amount of such payment finally approved by the Supreme Court of the State of New York pursuant to the Regulatory Approvals.  For the avoidance of doubt, no interest shall accrue on Maximum Member Financial Contribution pursuant to the Focus Sale Global Settlement Term Sheet or this Plan.

**Member Financial Contribution** means the Bondholder Reimbursement *plus* the Resident Refund Actual Subsequent Distribution Amount.

***Mortgage and Security Agreement*** means that Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of September 8, 2021, between the Debtor and Bond Trustee.

***Non-Consenting Resident Credit*** means the amount calculated by multiplying the Resident Refund Maximum Subsequent Distribution Amount by the Non-Consenting Resident Quotient.

***Non-Consenting Resident Quotient*** means the number of Residents that do not "opt-in" to the Releases divided by the total number of Residents.

***Other Priority Claim*** means any Claim entitled to priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

***Other Secured Claim*** means a Secured Claim other than a Bondholder Secured Claim.

***Person*** means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtor.

***Petition Date*** means March 22, 2023.

***Plan*** means this amended plan of liquidation, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, together with any and all exhibits and schedules hereto.

***Plan Supplement*** means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, to be filed ten (10) days prior to the Combined Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

***Post-Termination Resident*** means any Person (or the estate thereof) that was a resident of the Facility subject to a Residency Agreement as of October 16, 2024 and is not deceased as of March 14, 2025.

***Post-Termination Resident Claim*** means any Claim against the Debtor asserted by a Post-Termination Resident.

***Post-Termination Resident Sale Proceeds*** means thirty percent (30%) of the Distributable Net Sale Proceeds.

***Post-Termination Resident Supplemental Funding*** means forty percent (40%) of the Distributable Net Sale Proceeds.

***Pre-Termination Resident*** means any Person (or the estate thereof) that (i) ceased to be a resident of the Facility subject to a Residency Agreement before October 16, 2024 or (ii) was a resident of the Facility subject to a Residency Agreement as of October 16, 2024 but is deceased as of March 14, 2025.

***Pre-Termination Resident Claim*** means any Claim against the Debtor asserted by a Pre-Termination Resident.

***Pre-Termination Resident Sale Proceeds*** means thirty percent (30%) of the Distributable Net Sale Proceeds.

***Priority Claim*** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim, Accrued Professional Compensation Claim or Priority Tax Claim.

***Priority Tax Claim*** means any Claim of a Governmental Unit of a kind entitled to priority under section 507(a)(8) of the Bankruptcy Code.

***Pro Rata*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class or among specified Classes, as applicable.

***Professionals*** means all professionals employed in the Chapter 11 Case pursuant to sections 327, 328, 363 and 1103 of the Bankruptcy Code.

***Proof of Claim*** means a proof of Claim filed against the Debtor in the Chapter 11 Case.

***Regulatory Approvals*** means all applicable regulatory and/or governmental agency approvals relating to the Member Financial Contribution, including, without limitation, the Department of Health and Public Health and Health Planning Council approval of the new operator of ANH, and approval with respect to use or distribution of the proceeds of an Acceptable Nursing Home Sale pursuant to the Focus Sale Global Settlement Term Sheet (including, without limitation, the approval by the New York State Supreme Court on notice to the Office of the New York State Attorney General of the contribution by ANH to ACCHS and the contribution by ACCHS contemplated by the Focus Sale Global Settlement Term Sheet).

***Related Persons*** means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective current and former members, partners, equity holders, certificate holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity on or any time prior to or after the Petition Date, and any Person claiming by or through any of them.

***Released Parties*** means (i) the Debtor, (ii) the Committee and its members (each in their capacity as such), (iii) the Ad Hoc Group, (iv) ACCHS, (v) ANH, (vi) the Issuer, (vii) the Consenting Bondholders, (viii) the Bond Trustee, (ix) Focus, and (x) each Related Person of each Person in the foregoing clauses (i) through (ix).

*Releases* means the releases set forth in section 11.4(a) of this Plan.

*Releasing Parties* means (i) the Debtor, (ii) the Committee, (iii) the Ad Hoc Group, (iv) ACCHS, (v) ANH , (vi) the Issuer, (vii) the Consenting Bondholders, (viii) the Bond Trustee, (ix) Focus, (x) all Holders of Resident Claims who (A) "opt-in" to the Releases, or (B) do not "opt-in" to the Releases and enter into an agreement with the Liquidating Trustee (in a form reasonably acceptable to ACCHS) to become a Releasing Party after the Effective Date, and (xi) each Related Person of each Person in the foregoing clauses (i) through (ix).

*Remnant Assets* means any Excluded Assets or the proceeds thereof remaining after payment (i) in satisfaction Allowed Administrative Expense Claims and Allowed Accrued Professional Compensation Claims, and (ii) in satisfaction of any outstanding Liens of the Bond Trustee and any Diminution Claims.

*Residency Agreements* means those certain residency agreements entered into by and between the Debtor, on the one hand, and a Resident, on the other hand, and any additional documents related thereto.

*Resident* means any Pre-Termination Resident or Post-Termination Resident.

*Resident Claim* means any Pre-Termination Resident Claim or Post-Termination Resident Claim.

*Resident Refund Actual Subsequent Distribution Amount* means the Resident Refund Maximum Subsequent Distribution Amount *minus* the Non-Consenting Resident Credit.

*Resident Refund Maximum Subsequent Distribution Amount* means the amount equal to (i) the Maximum Member Financial Contribution *minus* (ii) the Bondholder Reimbursement.

*Sale* means the sale of substantially all of the Debtor's assets pursuant to the terms of the Focus APA.

*Sale Closing Date* means the "Closing Date" as defined in the Focus APA.

*Schedules* means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been or may be amended, modified, or supplemented from time to time.

*Secured Claim* means any Claim of a Creditor that is secured by property of the Estate, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in section 506(a) of the Bankruptcy Code.  Secured Claim also means a Claim of a Creditor that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff, as provided in section 506(a) of the Bankruptcy Code.

**Secured Parties** means, collectively, the Bond Trustee and Holders of Other Secured Claims.

**Subsequent Resident Distribution** means Cash in an amount equal to such Resident's Pro Rata allocation of the Resident Refund Actual Subsequent Distribution Amount, calculated based on entrance fee refund amounts, net of any setoff, asserted in any Pre-Termination Resident Claim or Post-Termination Resident Claim.

**Unexpired Lease** means a lease to which the Debtor is a party that is subject to assumption, assumption or assignment or rejection under section 365 of the Bankruptcy Code.

**Unimpaired** means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

**United States Trustee** means the Office of the United States Trustee for the Eastern District of New York.

     1.2     **Interpretation, Application of Definitions and Rules of Construction.** Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used but not defined in this Plan shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In the event of any ambiguity or conflict between this Plan and the Disclosure Statement, the provisions of this Plan shall govern. Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise requires.

     1.3     **Computation of Time**. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

## SECTION 2.  ADMINISTRATIVE AND PRIORITY CLAIMS

2.1    ***Administrative Expense Claims***.

(a)    Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment with the Debtor or Liquidating Trustee, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim on the later of the Effective Date or the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as Debtor in Possession, or liabilities arising under obligations incurred by the Debtor, as Debtor in Possession, prior to the Effective Date, shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, including, but not limited to, all orders entered by the Bankruptcy Court related to the foregoing.  In addition, Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 incurred prior to the Effective Date shall be paid on the Effective Date by the Debtor, and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidating Trustee in accordance with the applicable schedule for payment of such fees.

(b)    ***Administrative Expense Claims Bar Date***.  To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date.  Any Administrative Expense Claim that is not asserted in accordance herewith shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, the Debtor's Estate, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

2.2    ***Accrued Professional Compensation Claims***.  All Professionals seeking payment of Accrued Professional Compensation Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Case by the first Business Day that is thirty (30) days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such Allowed Accrued Professional Compensation Claim and the Debtor or Liquidating Trustee.  Any Accrued Professional Compensation Claim that is not asserted in accordance with this section 2.2 shall be deemed disallowed under this Plan and shall be forever barred against the Debtor, the Debtor's Estate, the Liquidating Trust, or any of the Assets or Liquidating Trust Assets, and the Holder

thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

2.3     ***Priority Tax Claims***.  Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by a Holder of an Allowed Priority Tax Claim and the Debtor, or the Liquidating Trustee, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full in Cash of the Allowed amount of the Priority Tax Claim on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim.

2.4     ***DIP Claims***.  In full satisfaction of the DIP Claims, the Holder of an Allowed DIP Claim shall receive, on or as soon as reasonably practicable after the Effective Date, indefeasible payment in full from the Bondholder Sale Proceeds.

2.5     ***Diminution Claim.***  The Bond Trustee's Diminution Claim shall be paid from the Excluded Assets and proceeds thereof, after payment of expenses set forth in the Approved Budget.

## SECTION 3.  CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     Except as set forth herein, all Claims against and Interests in the Debtor are placed in a particular Class.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Expense Claims, Accrued Professional Compensation Claims, Priority Tax Claims, DIP Claims and the Diminution Claim.

The following table classifies Claims against and Interests in the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the treatment described in this section 3.  This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No; Deemed to Accept | 100% |
| 2 | Other Secured Claims | Unimpaired | No; Deemed to Accept | 100% |

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|------------------|---------------------|
| 3 | Bondholder Secured Claims | Impaired | Yes | 42% |
| 4 | Bondholder Deficiency Claims | Impaired | Yes | Unknown[1] |
| 5 | Pre-Termination Resident Claims | Impaired | Yes | 30% |
| 6 | Post-Termination Resident Claims | Impaired | Yes | 32% |
| 7 | General Unsecured Claims | Impaired | Yes | Unknown |
| 8 | Interests in the Debtor | Impaired | No; Deemed to Reject | 0% |

## SECTION 4.  TREATMENT OF CLAIMS AND INTERESTS

4.1     ***Other Priority Claims (Class 1)***.  This Class consists of all Allowed Other Priority Claims against the Debtor that are specified as having priority in section 507(a) of the Bankruptcy Code, if any such Claims exist as of the Effective Date.  Except to the extent that a Holder of an Allowed Other Priority Claim against the Debtor has agreed to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, or (iii) the date for payment provided by any agreement or arrangement between the Debtor or the Liquidating Trustee, as applicable, and the Holder of the Allowed Other Priority Claim against the Debtor.

4.2     ***Other Secured Claims (Class 2)***.  This Class consists of all Allowed Other Secured Claims against the Debtor.  In full satisfaction of an Allowed Other Secured Claim, on the later of the Effective Date and the date on which the Other Secured Claim is Allowed, each Holder of an Allowed Other Secured Claim shall receive, at the sole and exclusive option of the Liquidating Trustee:  (a) Cash equal to the amount of such Claim; (b) the Collateral securing such Claim; or (c) satisfaction of such Claim pursuant to such other terms and conditions as may be agreed upon by the Debtor or the Liquidating Trustee, as applicable, and the Holder of such Allowed Other Secured Claim.

4.3     ***Bondholder Secured Claims (Class 3)***.   This Class consists of the Bondholder Secured Claims of the Holders of the Bonds and Bond Trustee against the Debtor. The Bondholder Secured Claims are Allowed Claims.  Upon the terms and subject to the conditions set forth in this Plan and the Focus Sale Global Settlement Term Sheet, in full and final satisfaction, settlement, release, and discharge of the Bondholder Secured Claims, the Bond Trustee shall

---

[1]     Holders of Allowed Bondholder Deficiency Claims and General Unsecured Claims and are entitled to receive their Pro Rata share of the proceeds of Remnant Assets, if any.  The amount of any Remnant Assets is estimated to be de minimis, if any, and will be determined by the Liquidating Trustee following application of the Liquidating Trust Assets.

receive, on behalf of itself and the Holders of the Bondholder Secured Claims, the following: (i) on the earlier of the Effective Date and the Sale Closing Date, Cash in an amount equal to the Bondholder Sale Proceeds; (ii) upon receipt by the Liquidating Trust of the Member Financial Contribution, Cash in an amount equal to the Bondholder Reimbursement, and (iii) the Excluded Assets and proceeds thereof, to the extent subject to the Bond Trustee's Lien, after payment of expenses set forth in the Approved Budget and the Diminution Claim.

4.4    ***Bondholder Deficiency Claims (Class 4)***.  This Class consists of the Bondholder Deficiency Claims of the Holders of the Bonds and Bond Trustee against the Debtor. The Bondholder Deficiency Claims are Allowed Claims.  Upon the terms and subject to the conditions set forth in this Plan and the Focus Sale Global Settlement Term Sheet, in full and final satisfaction, settlement, release, and discharge of the Bondholder Deficiency Claims, the Bond Trustee shall receive, on behalf of itself and the Holders of the Bondholder Deficiency Claims, Cash in an amount equal to the Pro Rata share of the proceeds of Remnant Assets distributable to Holders of Allowed Bondholder Deficiency Claims and Allowed General Unsecured Claims, if any.  For the purposes of calculating the Pro Rata share with respect to the Remnant Assets, the aggregate value of the Bondholder Deficiency Claims shall be $79,000,000.

4.5    ***Pre-Termination Resident Claims (Class 5)***.  This Class consists of all Allowed Pre-Termination Resident Claims against the Debtor.  Upon the terms and subject to the conditions set forth in this Plan and the Focus Sale Global Settlement Term Sheet, in full and final satisfaction, settlement, release, and discharge of the Allowed Pre-Termination Resident Claims, each Holder of an Allowed Pre-Termination Resident Claim that is a Releasing Party shall receive (i) on or as soon as reasonably practicable after the Effective Date, the Initial Pre-Termination Resident Distribution, and (ii) upon receipt by the Liquidating Trust of the Member Financial Contribution, the Subsequent Resident Distribution. Each Holder of an Allowed Pre-Termination Resident Claim that is not a Releasing Party shall <u>not</u> receive any distribution on account of such Holder's Allowed Pre-Termination Resident Claim.

4.6    ***Post-Termination Resident Claims (Class 6)***.  This Class consists of all Allowed Post-Termination Resident Claims against the Debtor.  Upon the terms and subject to the conditions set forth in this Plan and the Focus Sale Global Settlement Term Sheet, in full and final satisfaction, settlement, release, and discharge of the Allowed Post-Termination Resident Claims, each Holder of an Allowed Post-Termination Resident Claim that is a Releasing Party shall receive (i) on or as soon as reasonably practicable after the Effective Date, the Initial Post-Termination Resident Distribution, and (ii) upon receipt by the Liquidating Trust of the Member Financial Contribution, the Subsequent Resident Distribution. Each Holder of an Allowed Post-Termination Resident Claim that is not a Releasing Party shall <u>not</u> receive any distribution on account of such Holder's Allowed Post-Termination Resident Claim.

4.7    ***General Unsecured Claims (Class 7)***.  This Class consists of all Allowed General Unsecured Claims against the Debtor not included within the other specifically defined Classes hereunder.  Upon the terms and subject to the conditions set forth in this Plan and the Focus Sale Global Settlement Term Sheet, in full and final satisfaction, settlement, release, and discharge of the Allowed General Unsecured Claims, each Holder of an Allowed General Unsecured Claim shall receive Cash in an amount equal to its Pro Rata share of the proceeds of

Remnant Assets distributable to Holders of Allowed Bondholder Deficiency Claims and Allowed General Unsecured Claims, if any.[2]

4.8     *Interests in the Debtor (Class 8)*.  This Class consists of ACCHS' interests in the Debtor, which will be cancelled as of the Effective Date.  ACCHS shall not be entitled to a Distribution on account of its Interests in the Debtor.

## SECTION 5.  CRAMDOWN.

If all applicable requirements for confirmation of this Plan are met as set forth in section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtor may request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code on the bases that this Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, this Plan.

## SECTION 6.  MEANS FOR IMPLEMENTATION OF THE PLAN.

6.1     *Settlement*.  Pursuant to the terms of the Focus Sale Global Settlement Term Sheet, on the earlier of the Effective Date and Sale Closing Date, the Debtor or Liquidating Trustee (as applicable) shall distribute the Bondholder Sale Proceeds to the Bond Trustee for distribution to Holders of the Allowed Bondholder Secured Claims in accordance with the terms and conditions of the Bond Documents.  Distributions to the Bond Trustee for distribution to Holders of the Allowed Bondholder Secured Claims in connection with the Bondholder Reimbursement and Excluded Assets and distributions to Holders of Allowed Pre-Termination Resident Claims and Post-Termination Resident Claims in connection with the Subsequent Resident Distribution shall be made as soon as reasonably practicable following receipt by the Liquidating Trustee of the Member Financial Contribution.  For the avoidance of doubt, the Member Financial Contribution must be paid to the Liquidating Trustee for distribution in accordance with the Liquidating Trust Agreement; if the Member Financial Contribution (or any portion thereof) is first paid to any other party, it shall be held in trust for the Liquidating Trustee pending turnover.  Distributions of the proceeds of Remnant Assets, if any, to Holders of Allowed General Unsecured Claims and the Bond Trustee for distribution to Holders of the Allowed Bondholder Deficiency Claims shall be made as soon as reasonably practicable in accordance with this Plan and the Focus Sale Global Settlement Term Sheet.  The Bond Trustee consents to the continued use of its Cash Collateral (as such term is defined in section 363(a) of the Bankruptcy Code) to the extent and for the purposes set forth in this Plan and the DIP Order.

6.2     *Liquidating Trust*

(a)     *Establishment of Liquidating Trust*.  On the Effective Date, the Liquidating Trustee shall execute the Liquidating Trust Agreement and, in his or her capacity as Liquidating Trustee, accept all Liquidating Trust Assets on behalf of the Beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Liquidating Trust Assets not in his or her possession.  The Liquidating Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date.  The

---

[2]     The aggregate amount of General Unsecured Claims is approximately $9.2 million.

Liquidating Trust shall be established for the purposes of (i) liquidating any non-Cash Liquidating Trust Assets; (ii) maximizing recovery of the Liquidating Trust Assets for the benefit of the Beneficiaries; and (iii) distributing the proceeds of the Liquidating Trust Assets to the Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidating Trust.

(b)     ***Application of Liquidating Trust Assets***.  On and after the Effective Date, all Sale proceeds remaining after payment of the Bondholder Sale Proceeds shall be applied: (i) first, in satisfaction of all Allowed Administrative Expense Claims, Allowed Accrued Professional Compensation Claims and Allowed Priority Claims that have not been paid; (ii) second, to fund an amount the Debtor, the Committee, the Ad Hoc Group and the Bond Trustee, each in consultation with ACCHS, determine is necessary to administer and operate the Liquidating Trust in accordance with this Plan and the Liquidating Trust Agreement (the "***Liquidating Trust Reserve***"); and (iii) third, all remaining amounts (the "***Distributable Net Sale Proceeds***") shall fund the Initial Pre-Termination Resident Distribution and the Initial Post-Termination Resident Distribution.  The proceeds of any Remnant Assets not subject to the Bond Trustee's Lien shall be distributed Pro Rata to Holders of Allowed General Unsecured Claims and the Bond Trustee on behalf of Holders of the Bondholder Deficiency Claims.  Proceeds of any assets subject to the Bond Trustee's Lien shall be distributed exclusively to the Bond Trustee.

(c)     ***Appointment of the Liquidating Trustee***.  The Liquidating Trustee shall be appointed pursuant to the Confirmation Order and subject to removal only by the Bankruptcy Court upon application or motion by a Beneficiary of the Liquidating Trust, after notice and a hearing, and for cause shown, including (i) the willful and continued refusal by the Liquidating Trustee to perform his or her duties under this Plan and the Liquidating Trust Agreement, and (ii) gross negligence, gross misconduct, fraud, embezzlement or theft.  The Liquidating Trustee will be jointly selected by the Debtor, the Committee, the Ad Hoc Group and the Bond Trustee (each in consultation with ACCHS).  During the term of the Liquidating Trust, the Liquidating Trustee shall be entitled to compensation payable from the Liquidating Trust Reserve as set forth in the Liquidating Trust Agreement.

(d)     ***Beneficiaries of Liquidating Trust***.    The interests of the Beneficiaries in the Liquidating Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

(e)     ***Vesting and Transfer of Liquidating Trust Assets to the Liquidating Trust***.  On the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code, the Liquidating Trust Assets, including the Liquidating Trust Reserve, shall vest in the Liquidating Trust free and clear of all Liens, Claims and Interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; *provided, however*, that the Liquidating Trustee may abandon or otherwise not accept any non-Cash Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value to the Liquidating Trust.  Any non-Cash Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall not be property of the Liquidating Trust.

(f)    ***Retention of Professionals***.  The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals (collectively, the "***Liquidating Trust Professionals***") that are necessary to assist the Liquidating Trustee in the performance of his or her duties pursuant to this Plan, the Liquidating Trust Agreement and the Confirmation Order.  The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trustee from the Liquidating Trust Reserve upon submission of monthly statements (the "***Liquidating Trust Monthly Fee Statements***") for services rendered and costs incurred to the Liquidating Trustee for review and approval.  The Liquidating Trustee will have thirty (30) days from receipt of each Liquidating Trust Monthly Fee Statement to object to the Liquidating Trust Monthly Fee Statement.  In the event that an objection to a Liquidating Trust Monthly Fee Statement cannot be promptly resolved, the dispute will be submitted by the Liquidating Trustee to the Bankruptcy Court for adjudication.  The Bankruptcy Court will retain jurisdiction to adjudicate objections to Liquidating Trust Monthly Fee Statements.  In the event that no objection is raised to a Liquidating Trust Monthly Fee Statement within the thirty (30) day period, the requested amount in the Liquidating Trust Monthly Fee Statement will be promptly paid by the Liquidating Trustee, subject to any requirements under the Plan.

(g)    ***Liquidating Trust Expenses***.  Subject to the provisions of the Liquidating Trust Agreement, all reasonable costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan, the Focus Sale Global Settlement Term Sheet, the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from, as applicable, the Liquidating Trust shall be a charge against and shall solely be paid from the Liquidating Trust Reserve.  Such expenses shall be paid in accordance with the Liquidating Trust Agreement.

(h)    ***Certain Powers and Duties of the Liquidating Trust and Liquidating Trustee***.

(i)    ***General Powers of the Liquidating Trustee***.  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3).  The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including collection of the Member Financial Contribution; (b) pay obligations incurred by the Liquidating Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of Liquidating Trust Assets; (d) calculate and implement Distributions of Liquidating Trust Assets, which shall include making reasonable efforts to contact each Holder of an Allowed Pre-Termination Resident Claim or Post-Termination Resident Claim that is not a Releasing Party regarding entry into an agreement (in a form reasonably acceptable to ACCHS) to become a Releasing Party entitled to a Distribution in accordance with sections 4.5 and 4.6 hereof; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidating Trust Agreement, Causes of Action vested in the Liquidating Trust; (f) resolve issues involving Claims in accordance with this Plan; (g) enforce and implement the terms of the Focus Sale Global Settlement Term Sheet, as necessary, and (h) undertake all administrative functions of the Chapter 11 Case,

including the payment of fees payable to the United States Trustee. The Liquidating Trust is the successor to the Debtor and its Estate.

(ii) ***Books and Records***. Except as required by applicable law or as agreed by the Liquidating Trustee, on the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtor and its Estate; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trust determines, in accordance with the Liquidating Trust Agreement, that such retention is no longer necessary or required.

(iii) ***Investments of Cash***. The Liquidating Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments, *provided, however*, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

(iv) ***Claims Process***. The Liquidating Trust shall have the right to object to Claims not otherwise Allowed in connection with post-Effective Date Claims allowance process or other order of the Bankruptcy Court, *provided*, that the Liquidating Trustee shall use reasonable efforts to first attempt to resolve any Resident Claim on an informal basis without resort to the filing of an objection. Following any such objection, the Liquidating Trustee may resolve any such Claims, which shall require: (i) approval only of the Liquidating Trustee if the resolved Claim amount and the amount of any reduction from the asserted amount of the Claim are each less than one hundred thousand dollars ($100,000); and (ii) approval of the Liquidating Trustee and the Bankruptcy Court, upon notice and a hearing, if the amount asserted by the claimant or the amount of the reduction is equal to or greater than one hundred thousand dollars ($100,000).

(v) ***Tax Reporting***. The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan. The Liquidating Trust also shall annually (for tax years in which Distributions from the Liquidating Trust are made) send to each Beneficiary a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit and all such Beneficiaries shall report such items on their federal income tax returns; *provided, however,* that no such statement need be sent to any Class that is not expected to receive any Distribution from the Liquidating Trust. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidating Trust's Beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust.

As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes. The Liquidating Trust may request an expedited determination of taxes of the Debtor or of the Liquidating Trust under section 505(b) of the

Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtor and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust shall be responsible for filing all federal, state, and local tax returns for the Debtor and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements; *provided, however*, that, if the Liquidating Trustee fails to withhold in respect of amounts received or distributable with respect to any Beneficiaries and the Liquidating Trustee is later held liable for the amount of such withholding, such Beneficiaries shall reimburse the Liquidating Trustee for such liability. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such Beneficiaries for all purposes of the Liquidating Trust Agreement. The Liquidating Trustee shall be authorized to collect such tax information from the Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Liquidating Trust Agreement and the Confirmation Order. In order to receive distributions under the Plan, all Beneficiaries will need to identify themselves to the Liquidating Trustee and provide tax information and the specifics of their holdings, to the extent the Liquidating Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable).

(i) ***Preservation of Right to Conduct Investigations***. The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtor prior to the Effective Date shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust. For the avoidance of doubt, and notwithstanding the foregoing and any other provision of this Plan, the Liquidating Trust, as successor in interest to the Debtor, shall be bound by the terms of the Focus Sale Global Settlement Term Sheet, including its requirement to refrain from continuing or conducting any further discovery or litigation targeted at the ACCHS, ANH or any of their Related Persons until Termination (as defined therein).

(j) ***Prosecution and Resolution of Causes of Action***.

(i) ***The Liquidating Trust's Exclusive Authority to Pursue, Settle, or Abandon Causes of Action***. From and after the Effective Date, prosecution and settlement of all Causes of Action, including Avoidance Actions, transferred to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust pursuant to the Plan and the Confirmation Order. From and after the Effective Date, the Liquidating Trust shall have exclusive rights, powers, and interests of the Debtor's Estate to pursue, settle or abandon such Causes of Action as the sole representative of the Debtor's Estate pursuant to section 1123(b)(3) of the Bankruptcy Code. Proceeds recovered from all Causes of Action transferred to the Liquidating Trust will be deposited into the Liquidating Trust and will be distributed by the Liquidating Trustee to the Beneficiaries in accordance with the provisions of the Plan, the Focus Sale Global Settlement Term Sheet and Liquidating Trust Agreement. All Causes of Action, including Avoidance Actions, that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with this Plan. No Person may rely on the absence of

22

a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or Liquidating Trustee will not pursue any and all available Causes of Action against such Person.  The Liquidating Trustee expressly reserves all Causes of Action, except for any Causes of Action against any Person that are expressly released or waived under the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of the Plan.  No claims or Causes of Action against the Released Parties expressly released or waived pursuant to the Plan or Focus Sale Global Settlement Term Sheet shall be transferred to the Liquidating Trust, the Liquidating Trustee shall not have standing to pursue such claims or Causes of Action, and all such claims and Causes of Action shall be waived, released and discharged pursuant to the Plan and the Focus Sale Global Settlement Term Sheet.  Notwithstanding the foregoing, any compromise or settlement of a Cause of Action by the Liquidating Trustee of an amount greater than one hundred thousand dollars ($100,000) must be acceptable to the Bond Trustee and the designees of the Committee and the Ad Hoc Group appointed pursuant to the Liquidating Trust Agreement.

(ii)    ***Settlement of Causes of Action***.  Settlement by the Liquidating Trust of any Cause of Action transferred to the Liquidating Trust shall require: (i) approval only of the Liquidating Trustee if the amount claimed by the Liquidating Trust against a defendant is less than one hundred thousand dollars ($100,000); and (ii) approval of the Liquidating Trustee and the Bankruptcy Court, upon notice and a hearing, if the amount claimed by the Liquidating Trust against a defendant is unliquidated or equals or exceeds one hundred thousand dollars ($100,000).

(k)    ***Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets***.  For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Debtor's Estate of an undivided interest in each of the Liquidating Trust Assets in satisfaction of their Allowed Claims (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust in exchange for their interests in the Liquidating Trust, and the Liquidating Trust's Beneficiaries will be treated as the grantors and owners thereof.

(l)    ***Limitation of Liability***.  No recourse will ever be had, directly or indirectly, against the Liquidating Trustee or his or her respective employees, professionals, representatives, agents, successors or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Trust under this Plan or by reason of the creation of any indebtedness by the Liquidating Trust or the Liquidating Trustee under this Plan.  All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Liquidating Trust Assets.  The Liquidating Trust and the Liquidating Trustee and their respective officers, directors, employees, professionals, representatives, agents, successors or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their sound judgment;

*provided, however*, that this section will not apply to any gross negligence or willful misconduct by the Liquidating Trust and the Liquidating Trustee or their respective officers, directors, employees, professionals, representatives, agents, successors or assigns.

(m)    ***Term of Liquidating Trust***.    The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under this Plan and the Liquidating Trust Agreement have been made, and (v) the Chapter 11 Case has been closed; *provided, however*, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that an extension is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(n)    ***Conflicts Between the Liquidating Trust Agreement and the Plan***. In the event of any inconsistencies or conflict between the Liquidating Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

(o)    ***Excess Funds***.    In the event there is Liquidating Trust Distributable Cash remaining after all required Distributions under the Plan and the Liquidating Trust Agreement have been made, such Cash will be turned over to the Attorney General for the State of New York in accordance with New York law.

## SECTION 7.  DISTRIBUTIONS

7.1    ***Distribution Record Date***.    As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor or its agents shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Debtor or the Liquidating Trustee shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring after the Distribution Record Date.  The Debtor, the Liquidating Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes under the Plan only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

7.2    ***Date of Distributions***.    Except as otherwise provided in this Plan and the Focus Sale Global Settlement Term Sheet, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided therein.  Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in the Plan, no interest shall be payable by the Debtor or the Liquidating Trustee with respect to such Claims or any Distribution related thereto.  In the event that any payment or act under the Plan is required to be

made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on Distributions provided for thereunder, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

       7.3     ***Disbursing Agent***.    Except as otherwise provided in this Plan, all Distributions under this Plan shall be made by the Liquidating Trustee as Disbursing Agent or such other Person designated by the Liquidating Trustee as a Disbursing Agent on or after the Effective Date.

       7.4     ***Rights and Powers of Disbursing Agent***.  The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of this Plan.

       7.5     ***Delivery of Distributions in General***.  Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent.  Distributions to Holders of Allowed Claims will be made at the address of each such Holder as set forth in the Debtor's books and records, which books and records will be updated to reflect any updated mailing addresses provided to the Debtor by or on behalf of Residents who no longer reside at the Facility.  Distributions under this Plan on account of such Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in this Plan.  None of the Debtor, the Liquidating Trustee, and the applicable Disbursing Agent shall incur any liability whatsoever on account of any distributions under this Plan except for gross negligence, willful misconduct or fraud.   Any distributions on account of the Bond Claims shall be made to the Bond Trustee, and the Bond Trustee shall make such further distributions to the Holders of the Bonds as set forth in the Bond Documents, subject to the provisions of section 11.12 hereof.

       7.6     ***Payments and Distributions on Disputed Claims***.  Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.  Notwithstanding any provision otherwise in this Plan and except as may be agreed to by the Debtor or the Liquidating Trustee, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

       7.7     ***Manner of Payment***.  Any Distributions to be made by or on behalf of the Debtor or the Liquidating Trustee, as applicable, pursuant to this Plan shall be made by checks

drawn on accounts maintained by the Debtor or the Liquidating Trustee, respectively, or by wire transfer if circumstances justify, at the option of the Debtor or the Liquidating Trustee, as applicable; *provided, however*, any payments made to the Bond Trustee shall be made by wire transfer.

       7.8    ***Undeliverable Distributions and Unclaimed Property***.  In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such Distribution shall be made as soon as practicable after such Distribution has become deliverable; *provided, however*, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the date of the Distribution.  After such date, all "unclaimed property" or interests in property shall revert to the Liquidating Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property shall be discharged and forever barred.

       7.9    ***Withholding and Reporting Requirements***.  In connection with this Plan and all instruments issued in connection herewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all Distributions under this Plan shall be subject to any such withholding or reporting requirements.

       7.10    *[Reserved].*

       7.11    ***Setoffs***.  The Debtor or the Liquidating Trustee may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which a Distribution shall be made), any claims of any nature whatsoever that the Debtor or the Liquidating Trustee may have against the Holder of such Claim, including any outstanding amounts due to the Debtor in connection with any Residency Agreement, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Trustee of any such claim the Debtor or the Liquidating Trustee may have against the Holder of such Claim.

       7.12    ***Insurance Claims***.  Except for the payments to be made with respect to the Bondholder Secured Claims, the Bondholder Deficiency Claim, the Pre-Termination Resident Claims and the Post-Termination Resident Claims, no Distributions under this Plan shall be made on account of Allowed Claims until the Holder of such Allowed Claim has exhausted all remedies with respect to the Debtor's Insurance Policies.  To the extent that the Debtor's insurers agree to satisfy in full a Claim, then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

       7.13    ***Applicability of Insurance Policies***.  Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made in accordance with the provisions of any applicable Insurance Policy.  Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor, Liquidating Trustee or any Person may hold against any insurers under any of the Debtor's Insurance Policies, nor shall anything contained in

the Disclosure Statement or herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

7.14    **No Postpetition Interest**.  Unless otherwise specifically provided for herein or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on such Claim or Interest.

7.15    **Allocation of Distributions Between Principal and Unpaid Interest**.  With the exception of any Distributions on account of the Bonds, to the extent that any Claim entitled to a Distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for U.S. federal income tax purposes, be allocated on the Debtor's books and records to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the accrued but unpaid interest.  For the avoidance of doubt, Holders of the Bondholder Secured Claims and Bondholder Deficiency Claims may, in their discretion, first apply any Distribution against accrued and unpaid interest on their Claims, and then against the outstanding principal amount of their Claims.

7.16    **Distributions Free and Clear**.  Except as may be otherwise provided herein, all Distributions under this Plan shall be free and clear of any Liens, Claims, encumbrances, and other interests.

7.17    **Fractional Dollars; De Minimis Distributions**.  Notwithstanding any other provision of this Plan, Cash payments of fractions of dollars shall not be made.  Whenever any Distribution to a Holder of a Claim would otherwise call for Distribution of Cash in a fractional dollar amount, the actual Distribution of such Cash shall be rounded to the nearest whole dollar (up or down), with half dollars (or less) being rounded down.  Neither the Debtor nor the Liquidating Trustee shall be required to make any Cash payment of less than ten dollars ($10.00) with respect to any Claim or Interest unless a request therefor is made in writing to the Debtor or the Liquidating Trustee, as applicable; *provided, however*, that neither the Debtor nor the Liquidating Trustee shall have any obligation to make any Distribution, whether final or not, unless and until the total amount of such Distribution to a specific Holder of an Allowed Claim or Interest is equal to or greater than ten dollars ($10.00).

## SECTION 8.  PROCEDURES FOR DISPUTED CLAIMS

The provisions of this section 8 shall not be applicable to the Bond Claims, which are Allowed Claims.

8.1    **Allowance of Claims and Interests**.  Except as expressly provided herein, or in any order entered in the Chapter 11 Case prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Plan or the Bankruptcy Code or Allowed by the Bankruptcy Court by entry of a Final Order allowing such Claim or Interest.  On and following the Effective Date, the Liquidating Trust shall be vested with any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

8.2  ***Objections to Claims***.  The Debtor (before the Effective Date) or the Liquidating Trustee (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under this Plan, provided that any compromise or settlement by the Liquidating Trust of a Claim that is not a Pre-Termination Resident Claim or a Post-Termination Resident Claim in an amount greater than $100,000 must be acceptable to the Bond Trustee and designees of the Committee and the Ad Hoc Group appointed pursuant to the Liquidating Trust Agreement or otherwise approved by the Bankruptcy Court.  Any objections to Claims shall be filed and served on or before the later of (i) one hundred eighty (180) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court; *provided*, *however*, that the Liquidating Trustee may file objections to any General Unsecured Claim within thirty (30) days of filing a notice that the Liquidating Trustee has determined that Remnant Assets are available for distribution to Holders of Allowed General Unsecured Claims.  From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court, provided that any compromise or settlement by the Liquidating Trust of a Claim that is not a Pre-Termination Resident Claim or a Post-Termination Resident Claim, in an amount greater than $100,000, must be acceptable to the Bond Trustee and the designees of the Committee and the Ad Hoc Group appointed pursuant to the Liquidating Trust Agreement or otherwise approved by the Bankruptcy Court.

8.3  ***Estimation of Claims***.  The Debtor (before the Effective Date) or the Liquidating Trustee (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim; *provided, however*, the Liquidating Trustee may elect not to pursue such supplementary proceedings, instead electing to treat such maximum amount as the Allowed amount of such Claim.

8.4  ***No Distribution Pending Allowance***.  Notwithstanding any other provision of this Plan, if any portion of a Claim is disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.5  ***Distributions after Allowance***.  At such time as a Contingent Claim or a Disputed Claim becomes an Allowed Claim, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Contingent Claim or Disputed Claim becomes a Final Order.  To the extent that all or a portion of a Contingent Claim or a

Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed.

8.6     ***Preservations of Rights to Settle Claims***.   In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee shall have the discretion to retain and enforce, sue on, settle, or compromise all claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any person or entity without the approval of the Bankruptcy Court, subject to the terms of this Plan, the Confirmation Order, the Focus Sale Global Settlement Term Sheet, the Liquidating Trust Agreement, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.   The Liquidating Trustee may pursue such retained claims, rights, or causes of action, suits, or proceedings, as appropriate, in accordance with the best interests of the Liquidating Trust and its Beneficiaries.

8.7     ***Disallowed Claims***.   All Claims held by Persons against whom or which the Debtor or Liquidating Trustee has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan.   Disallowed Claims pursuant to this Section shall continue to be Disallowed Claims for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtor or Liquidating Trustee from such party have been paid.

## SECTION 9.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1     ***Assumption and Rejection of Executory Contracts and Unexpired Leases***. Except as otherwise provided in this Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, including the Focus APA, each of the Executory Contracts and Unexpired Leases of the Debtor shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease:  (1) was assumed or rejected previously by the Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to assume or reject filed on or before the Effective Date; or (4) is identified as an Executory Contract or Unexpired Lease to be assumed in connection with the Sale.  For the avoidance of doubt, all Residency Agreements shall be deemed rejected as of the Effective Date.

9.2     ***Inclusiveness***.   Unless otherwise specified, each Executory Contract and Unexpired Lease assumed or rejected by the Debtor shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease.

9.3     ***Rejection Claims***.   Except as otherwise provided in orders entered by the Bankruptcy Court or this Plan, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court and served on counsel to the Debtor or the Liquidating Trustee on or before the first Business Day that is thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the

Confirmation Order) approving such rejection; *provided,* that any such Claims arising from the rejection of an Unexpired Lease shall be subject to the cap on rejection damages imposed by section 502(b)(6) of the Bankruptcy Code. Notwithstanding the foregoing, Residents shall not be required to file a Proof of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases to be eligible to receive the Initial Pre-Termination Resident Distribution or the Initial Post-Termination Resident Distribution and the treatment of Pre-Termination Resident Claims and Post-Termination Resident Claims set forth in section 3 of this Plan shall be inclusive of any rejection Claim asserted or assertable by any Resident. Any non-Resident Claim arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtor or the Liquidating Trustee, the Debtor's Estate or their property without the need for any objection by the Debtor or the Liquidating Trustee or further notice to, or action, order or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the Debtor and shall be treated in accordance with this Plan.

9.4     ***Cure of Defaults***.   Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed under this Plan or otherwise is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure. If there is a dispute regarding (i) the nature or amount of any Cure, or (ii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption.

9.5     ***Full Release and Satisfaction***.  Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

9.6     ***D&O Liability Insurance Policies***.  The D&O Liability Insurance Policies shall be assumed by the Debtor effective as of the Effective Date, pursuant to sections 105, 365, and 1123 of the Bankruptcy Code, and nothing shall alter, modify, or amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Liability Insurance Policies, including the coverage for defense and indemnity under any of the D&O Liability Insurance Policies, which shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies regardless of whether such officers, directors, trustees, managers, or members remain in such position after the Effective Date. For the avoidance of doubt, the D&O Liability Insurance Policies will continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the D&O Liability Insurance Policies. In addition, after the Effective Date, neither the Debtor nor the Liquidating Trustee shall terminate or otherwise reduce coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect or purchased as of the Petition Date.

9.7    ***Reservation of Rights***.   Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtor or the Liquidating Trustee that any such contract or lease is in fact an Executory Contract or *Unexpired* Lease or that the Debtor or the Liquidating Trustee have any liability thereunder.

## SECTION 10.  CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

10.1    ***Conditions Precedent to Confirmation***.  Confirmation of this Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)    The proposed Confirmation Order shall be in form and substance satisfactory in all respects to the Debtor, ACCHS, the Committee, the Ad Hoc Group and the Bond Trustee;

(b)    The Plan and the Plan Supplement, including any schedules, documents, supplements and exhibits thereto shall be, in form and substance, acceptable to the Debtor, ACCHS, the Committee, the Ad Hoc Group and the Bond Trustee;

(c)    The Bankruptcy Court shall have entered an order approving the Focus Sale Global Settlement Term Sheet; and

(d)    The Focus Sale Global Settlement Term Sheet shall not have been terminated and shall remain in full force and effect.

10.2    ***Conditions Precedent to the Effective Date***.  The Effective Date shall not occur until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)    The Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtor, ACCHS, the Committee, the Ad Hoc Group and the Bond Trustee, and such Confirmation Order shall not be subject to any stay or an unresolved request for revocation under section 1144 of the Bankruptcy Code;

(b)    All actions, documents, certificates, and agreements necessary to implement this Plan, including, without limitation, the Liquidating Trust Agreement, shall have been affected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

(c)    The Sale Closing Date shall have occurred; and

(d)    The Focus Sale Global Settlement Term Sheet shall not have been terminated and shall remain in full force and effect.

10.3    ***Waiver of Conditions***.  The conditions to confirmation and consummation of this Plan set forth herein may be waived at any time by the Debtor, with the consent of ACCHS, the Committee, the Ad Hoc Group and the Bond Trustee, without notice to any other parties in

interest or the Bankruptcy Court and without a hearing; *provided, however*, that the parties may not waive the condition set forth in section 10.2(c) herein or the entry of the Confirmation Order.

　　　　　　10.4　　***Effect of Failure of Conditions***.　If consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:　(1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders of Claims or Interests or any other Person in any respect.

## SECTION 11.　EFFECT OF CONFIRMATION

　　　　　　11.1　　***Immediate Binding Effect***.　Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of this Plan and the Liquidating Trust Agreement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Liquidating Trustee, the Liquidating Trust and any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests are deemed to have accepted this Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan, each Person acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

　　　　　　11.2　　***Compromise and Settlement of Claims, Interests and Controversies***.　Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest.　The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and Holders of Claims and Interests and is fair, equitable and reasonable.

　　　　　　11.3　　***Releases by the Debtor***.　Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan, the Focus Sale Global Settlement Term Sheet or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Debtor and the consummation of the transactions contemplated by the Plan, on or after the Effective Date (in accordance with the Plan and the Focus Sale Global Settlement Term Sheet), the Released Parties are deemed released and discharged by the Debtor and its Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Sale or the transactions or

events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "***Debtor Released Claims***"), other than Debtor Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such Person.  For the avoidance of doubt, the releases contained in this section 11.3 shall not modify or waive the releases contained in the Focus Sale Global Settlement Term Sheet and/or the effect of termination of the Focus Sale Global Settlement Term Sheet on the terms set forth therein.

**11.4    *Releases by Holders of Claims*.    EXCEPT AS OTHERWISE PROVIDED HEREIN AND IN THE FOCUS SALE GLOBAL SETTLEMENT TERM SHEET, AND EXCEPT FOR THE RIGHT TO ENFORCE THIS PLAN, ON THE EFFECTIVE DATE, ALL RELEASING PARTIES SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE THE RELEASED PARTIES OF AND FROM ALL LIENS, CLAIMS, CAUSES OF ACTION, LIABILITIES, ENCUMBRANCES, SECURITY INTERESTS, INTERESTS OR CHARGES OF ANY NATURE OR DESCRIPTION WHATSOEVER RELATING TO THE DEBTOR, THE CHAPTER 11 CASE OR AFFECTING PROPERTY OF THE ESTATE, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, SCHEDULED OR UNSCHEDULED, CONTINGENT OR NOT CONTINGENT, UNLIQUIDATED OR FIXED, ADMITTED OR DISPUTED, MATURED OR UNMATURED, SENIOR OR SUBORDINATED, WHETHER ASSERTABLE DIRECTLY OR DERIVATIVELY BY, THROUGH, OR RELATED TO ANY OF THE RELEASED PARTIES AND THEIR SUCCESSORS AND ASSIGNS WHETHER AT LAW, IN EQUITY OR OTHERWISE, BASED UPON ANY CONDITION, EVENT, ACT, OMISSION OCCURRENCE, TRANSACTION OR OTHER ACTIVITY, INACTIVITY, INSTRUMENT OR OTHER AGREEMENT OF ANY KIND OR NATURE OCCURRING, ARISING OR EXISTING PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTOR, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE NEGOTIATION AND CONSUMMATION OF THE SALE, THE CONSUMMATION OF THIS PLAN OR THE ADMINISTRATION OF THIS PLAN, INCLUDING WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THIS PLAN, ALL REGARDLESS OF WHETHER (A) A PROOF OF CLAIM HAS BEEN FILED OR IS DEEMED TO HAVE BEEN FILED, (B) SUCH CLAIM IS ALLOWED OR (C) THE HOLDER OF SUCH CLAIM HAS VOTED TO ACCEPT OR REJECT THIS PLAN, EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.  FOR THE AVOIDANCE OF DOUBT, THIS RELEASE SHALL NOT MODIFY OR WAIVE THE RELEASES CONTAINED IN THE FOCUS SALE GLOBAL SETTLEMENT TERM SHEET AND/OR THE EFFECT OF TERMINATION OF THE FOCUS SALE GLOBAL SETTLEMENT TERM SHEET ON THE TERMS SET FORTH THEREIN.**

**NOTWITHSTANDING THE FOREGOING, IF THE FOCUS SALE GLOBAL SETTLEMENT TERM SHEET IS TERMINATED PRIOR TO PAYMENT OF THE MEMBER FINANCIAL CONTRIBUTION, ANY RELEASES UNDER THIS PLAN**

**OR THE FOCUS SALE GLOBAL SETTLEMENT TERM SHEET IN FAVOR OF ACCHS, ANH OR ANY OF THEIR RELATED PERSONS OTHER THAN THE DEBTOR (AND ANY SUCH RELEASES BY ACCHS, ANH OR ANY OF THEIR RELATED PERSONS OTHER THAN THE DEBTOR) SHALL BE DEEMED VOID AB INITIO.**

11.5    ***Exculpation***.    None of the Exculpated Parties shall have or incur any liability to any Holder of a Claim or Interest, or other party in interest, or any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns, with respect to any Exculpated Claim, including, without limitation, any act or omission in connection with, related to, or arising out of, in whole or in part, the Chapter 11 Case, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

11.6    ***Injunction***.    **FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTOR ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.**

**FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS PLAN AND THE FOCUS SALE GLOBAL SETTLEMENT TERM SHEET, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS PURSUANT TO THIS PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS:  (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATES OF SUCH PERSONS ON ACCOUNT OF OR IN**

**CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (D) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THIS PLAN.**

        **THE RIGHTS AFFORDED IN THIS PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS THEREUNDER SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, PROPERTY OR ESTATE. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED (EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN).**

        **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS PURSUANT THERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED, AND ALL INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(g) OF THE BANKRUPTCY CODE.**

        **ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, ITS RESPECTIVE SUCCESSORS AND ASSIGNS, AND ITS ASSETS AND PROPERTIES, WHETHER HELD DIRECTLY OR CONSTRUCTIVELY, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.**

        **NOTWITHSTANDING ANY PROVISION TO THE CONTRARY IN THIS PLAN, NOTHING HEREIN SHALL MODIFY OR WAIVE THE TERMS OF THE FOCUS SALE GLOBAL SETTLEMENT TERM SHEET, INCLUDING THE RELEASES CONTAINED THEREIN AND/OR THE EFFECT OF TERMINATION OF THE FOCUS SALE GLOBAL SETTLEMENT TERM SHEET ON THE TERMS SET FORTH THEREIN, OR RELEASE ANY PARTY'S RIGHT TO ENFORCE THE TERMS THEREOF.**

        11.7   ***Term of Injunctions or Stays***.  Unless otherwise provided in this Plan or the Confirmation Order, all injunctions or stays provided for under this Plan and ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Case, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of this Plan or the Confirmation Order, as applicable.

11.8    ***Injunction Against Interference with Plan***.  Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests, the Debtor, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtor's, the Liquidating Trust's, the Liquidating Trustee's, and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of this Plan.

11.9    ***Release of Liens***.  Except as otherwise provided in this Plan (including section 11.12 hereof) and the Focus Sale Global Settlement Term Sheet, or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with, and conditioned upon, the applicable Distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate, whether held directly by the Debtor or by the Issuer for or on behalf of Debtor, shall be fully released.  Except as otherwise provided in this Plan (including section 11.12 hereof) and the Focus Sale Global Settlement Term Sheet, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Debtor's Estate shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.  The liens of the Secured Parties on their respective collateral shall not be released or discharged until such assets are distributed to the applicable Secured Party in accordance with this Plan.

11.10    ***Effectuating Documents and Further Transactions***.  Upon entry of the Confirmation Order, the appropriate officers of the Debtor and the Liquidating Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan.  The Debtor or Liquidating Trustee, as applicable, may, and all Holders of Allowed Claims or Interests receiving Distributions pursuant to this Plan, at the request or direction of the Debtor or Liquidating Trustee, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

11.11    ***Corporate Action***.  Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects (whether to occur before, on or after the Effective Date).  All matters provided for in this Plan involving the corporate structure of the Debtor, and any corporate action required by the Debtor in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtor.

11.12    ***Cancellation of Agreements, Security Interests and Other Interests***.  On the Effective Date, all notes, instruments, certificates, and other documents evidencing the Bonds, shall be cancelled and the obligations of the Debtor thereunder or in any way related thereto shall be discharged, the Bonds shall be treated as redeemed solely for purposes of section 103 of the Internal Revenue Code of 1986, as amended, and the agents, Issuer and Bond Trustee thereunder

shall be automatically and fully discharged from all duties and obligations thereunder.  Notwithstanding the foregoing, following entry of the Confirmation Order, the Bond Indenture, insofar as it governs the rights of any Holder of a Bond Claim pursuant to an amendment or supplement of same, shall continue in effect solely for purposes of (i) allowing Holders of such Allowed Claims to receive Distributions under the Plan and the Focus Sale Global Settlement Term Sheet; (ii) allowing and preserving the rights of the agents or representatives of Holders of such Claims, including the Bond Trustee, to make Distributions on account of such Allowed Claims, as provided in the Plan, including permitting the Bond Trustee to take such actions as necessary with the securities depositories to permit any such Distribution; (iii) preserving all exculpations in favor of the Bond Trustee and the Issuer; (iv) except as otherwise provided in this Plan, the Focus Sale Global Settlement Term Sheet or the Focus Sale Order, allowing the Bond Trustee to enforce any rights and obligations owed to it under the Bond Documents, the Plan or the Confirmation Order, including the right of the Issuer (that the Issuer may continue to enforce in its own right) and the Bond Trustee to be compensated for fees and reimbursed for expenses, including expenses of its professionals, to assert its charging lien, to enforce its indemnity and other rights and protections with respect to and pursuant to the Bond Documents and with respect to the Focus Sale Global Settlement Term Sheet; and (v) permitting the Issuer and the Bond Trustee to appear and be heard in the Chapter 11 Case, or in any proceeding in the Bankruptcy Court or any other court.  Except to the extent otherwise provided in this Plan, any and all other notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in the Debtor or any claims against the Issuer shall be deemed inoperative and unenforceable against the Debtor and the Issuer, respectively and neither the Debtor nor the Issuer shall have any continuing obligations thereunder.  Notwithstanding anything to the contrary herein, the Issuer shall be automatically and fully discharged from all duties and obligations under the Bond Documents and the Bond Indenture, as so amended or supplemented, except to accommodate the actions of the Bond Trustee set forth in parts (i)-(v) of this section 11.12.  For purposes of the Issuer and Bond Indenture, the Bonds shall be deemed cancelled as soon as practicable after the Effective Date and the distribution of the Bondholder Sale Proceeds.

11.13  ***Dissolution of the Debtor***.  On the Effective Date and upon the Debtor causing the Liquidating Trust Assets to be transferred to the Liquidating Trust in accordance with section 6.2 of this Plan, the Debtor shall have no further duties or responsibilities in connection with implementation of this Plan.  Unless dissolved by the Debtor or the Liquidating Trustee after the Effective Date, upon entry of a final decree closing the Chapter 11 Case, the Debtor shall be deemed dissolved for all purposes in accordance with applicable state law without the need to take any further action or file any plan of dissolution, notice, or application with any applicable Governmental Unit.

11.14  ***Preservation of Causes of Action of the Debtor***.  In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the releases by the Debtor and exculpation provisions provided in the Plan), the Debtor and Liquidating Trustee shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action.

## SECTION 12.  MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

12.1  ***Modification and Amendments***.  This Plan or any exhibits thereto may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code subject to the consent of ACCHS, the Committee, the Ad Hoc Group and the Bond Trustee.  In addition, after the Confirmation Date, the Debtor or Liquidating Trustee may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

12.2  ***Effect of Confirmation on Modifications***.  Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

12.3  ***Revocation or Withdrawal of this Plan***.  The Debtor reserves the right to, consistent with its fiduciary duties, revoke or withdraw this Plan before the Effective Date.  If the Debtor revokes or withdraws this Plan, or if the Confirmation Date does not occur, then: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan, other than the Focus Sale Global Settlement Term Sheet (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Person.

## SECTION 13.  RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and this Plan, including, but not limited to, jurisdiction to:

(a)  allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)  decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)  resolve any matters related to:  (i) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including rejection Claims and cure Claims,

pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease in connection with the Sale; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

              (d)     ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and the Focus Sale Global Settlement Term Sheet;

              (e)     adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

              (f)     adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including, but not limited to, the Causes of Action involving the Liquidating Trustee or the Liquidating Trust;

              (g)     adjudicate, decide or resolve any and all matters related to any Cause of Action;

              (h)     adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

              (i)     enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

              (j)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of this Plan;

              (k)     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

              (l)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

              (m)     resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with or relate to this Plan, the Focus Sale Global Settlement Term Sheet, the Disclosure Statement, the Confirmation Order, the Liquidating Trust, the Liquidating Trust Agreement, any transactions or payments contemplated thereby, or any contract, instrument, release, indenture or other agreement or document relating to any of the foregoing;

              (n)     adjudicate any and all disputes arising from or relating to Distributions under this Plan;

        (o)      consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

        (p)      determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

        (q)      hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

        (r)      hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

        (s)      enforce all orders previously entered by the Bankruptcy Court;

        (t)      enforce the Focus Sale Global Settlement Term Sheet;

        (u)      hear any other matter not inconsistent with the Bankruptcy Code; and

        (v)      enter a final decree closing the Chapter 11 Case.

## SECTION 14.  MISCELLANEOUS PROVISIONS

        14.1    *Payment of Statutory Fees*.  All fees payable pursuant to 28 U.S.C.§ 1930 shall be paid on the earlier of when due or the Effective Date by the Debtor.  After the Effective Date, the Liquidating Trust shall be responsible for payment of any such fees until entry of a final decree closing the Chapter 11 Case.

        14.2    *Dissolution of Committee*.  On the Effective Date, the Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Case.

        14.3    *Section 1125(e) Good Faith Compliance*.  As of and subject to the occurrence of the Confirmation Date, the Debtor and its Related Persons shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

        14.4    *Substantial Consummation*.  On the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

        14.5    *Section 1146 Exemption*.  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor; (ii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by

such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, the Focus Sale Global Settlement Term Sheet or the Focus APA, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the imposition or collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

14.6    ***Closing of the Chapter 11 Case***.  The Liquidating Trustee shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rules and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.  For the avoidance of doubt, the Liquidating Trustee may seek to obtain a final decree and close the Chapter 11 Case prior to consummation of an Acceptable Nursing Home Sale.

14.7    ***Plan Supplement***.  Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Debtor hereby reserves the right to file such exhibits or schedules as a Plan Supplement.

14.8    ***Further Assurances***.  The Debtor or the Liquidating Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtor, the Liquidating Trustee, and all Holders of Claims receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

14.9    ***Exhibits Incorporated***.  All exhibits to the Plan, including the Plan Supplement, are incorporated into and are part of this Plan as if fully set forth herein.

14.10    ***Inconsistency***.  In the event of any inconsistency among this Plan, the Disclosure Statement and any exhibit to the Disclosure Statement, the provisions of this Plan shall govern.

14.11    ***No Admissions***.  If the Effective Date does not occur, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor, (b) prejudice in any manner the rights

of the Debtor or any other party in interest, or (c) constitute an admission of any sort by the Debtor or other party in interest.

14.12  **Reservation of Rights**.  Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date has occurred.  None of this Plan, any statement or provision contained in this Plan or any action taken or not taken by the Debtor with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests before the Effective Date.

14.13  **Successors and Assigns**.  The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Person.

14.14  **Entire Agreement**.  On the Effective Date, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

14.15  **Notices**.  All notices, requests, and demands to or upon the Debtor in the Chapter 11 Case shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by fax transmission, when received and telephonically confirmed to the below recipients:

AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.
Attention: Brooke Navarre
300 East Overlook
Port Washington, New York 11050
Telephone: (516) 472-6620
Email: bnavarre@theharborisde.org

With copies to:

Pamela Landman
1060 Amsterdam Avenue
New York, New York 10025
Telephone: (212) 316-7780
Email: plandman@amsterdamcares.org

- and –

ANKURA CONSULTING GROUP, LLC
Attention: Michael Morton
2021 McKinney Avenue, Suite 340
Dallas, TX 75201
Telephone: (214) 200-3680
Email: michael.morton@ankura.com

- and –

DLA PIPER LLP (US)
Attention:  Rachel Nanes
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Email: rachel.nanes@us.dlapiper.com

- and -

DLA PIPER LLP (US)
Attention:  James Muenker
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Email: james.muenker@us.dlapiper.com

       All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the Chapter 11 Case.  Any such Holder of a Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtor.

       14.16  ***Severability***.  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

       14.17  ***Governing Law***.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

       14.18  ***Request for Confirmation***.  The Debtor requests entry of the Confirmation Order under section 1129(a) of the Bankruptcy Code and, to the extent necessary, section 1129(b) of the Bankruptcy Code.

Dated: March 27, 2025

Respectfully submitted,

Amsterdam House Continuing Care
Retirement Community, Inc.

By:    _/s/  Michael Morton_____
       Name: Michael Morton
       Title: Chief Restructuring Officer

**EXHIBIT B**

**Focus Sale Global Settlement Term Sheet**

*EXECUTION COPY*

IN RE AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.
CASE NO. 23-70989 (AST)

<u>GLOBAL SETTLEMENT TERM SHEET</u>

This term sheet (the "<u>Global Settlement Term Sheet</u>"), dated as of February 28, 2025 (the "<u>Execution Date</u>"), describes the principal terms of a settlement (the "<u>Global Settlement</u>") by and among (i) Amsterdam House Continuing Care Retirement Community, Inc. (d/b/a The Harborside) (the "<u>Debtor</u>" or "<u>The Harborside</u>"), (ii) the Official Committee of Unsecured Creditors appointed in the Debtor's above-listed chapter 11 case (the "<u>Committee</u>"), (iii) the Ad Hoc Resident Group (the "<u>Ad Hoc Group</u>"), (iv) Amsterdam Continuing Care Health System, Inc., the Debtor's sole corporate member (the "<u>Member</u>"), (v) Amsterdam Nursing Home Corporation (1992) d/b/a Amsterdam Nursing Home ("<u>ANH</u>"), (vi) UMB Bank, N.A., as bond trustee (the "<u>Bond Trustee</u>"); and (vii) each of the undersigned members of the restricted group of holders of the Bonds[1] (collectively, the "<u>Restricted Group</u>" and, together with the Debtor, the Committee, the Ad Hoc Group, the Member, ANH and the Bond Trustee, the "<u>Parties</u>").

This Global Settlement Term Sheet shall become binding and enforceable on the Parties only upon the Effective Date (defined below).

This Global Settlement Term Sheet is being offered pursuant to Federal Rule of Evidence 408.

| <u>Settlement Terms</u> | <u>Description of Terms</u> |
|---|---|
| **Effective Date** | The "<u>Effective Date</u>" means the first business day after which (i) the United States Bankruptcy Court for the Eastern District of New York (the "<u>Bankruptcy Court</u>") has entered an order in the Debtor's pending chapter 11 case (the "<u>Chapter 11 Case</u>") approving this Global Settlement Term Sheet, in form and substance acceptable to the Parties (the "<u>Global Settlement Approval Order</u>"), (ii) the Global Settlement Approval Order has become a Final Order (as defined below), and (iii) the closing of the Focus Sale (as defined below). |
| **Termination of Prior Settlement Term Sheet** | Upon the Effective Date, the prior global settlement term sheet dated as of February 20, 2024 [Docket No. 669-2] (the "<u>Prior Global Settlement Term Sheet</u>") shall be deemed terminated. |
| **Initial Bond Trustee Recovery from Focus Sale** | Upon the Effective Date, the Bond Trustee shall receive $73.0 million in cash payable from the proceeds from the Focus Sale (the "<u>Initial Bond Trustee Recovery</u>"), which, in addition to repayment of the Bond Trustee Payment (defined below) and any recovery from the Remnant Assets (defined below), shall be in full and final satisfaction of any and all liens, |

---

[1] "<u>Bonds</u>" refers to the Nassau County Industrial Development Agency Continuing Care Retirement Community Taxable Revenue Bonds, Series 2021A (Amsterdam at Harborside Project) and Tax-Exempt Refunding Revenue Bonds, Series 2021B (Amsterdam at Harborside Project).

| | |
|---|---|
| | claims and encumbrances that the Bond Trustee has or had against the Debtor and its assets.[2] Upon the execution of the Global Settlement Term Sheet, the Bond Trustee shall consent to the Focus Sale, free and clear of the Bond Trustee's liens, claims or other encumbrances, on the terms set forth in the Focus APA (as defined below) and shall reasonably cooperate with any modifications thereto consistent with this Global Settlement Term Sheet to the extent requested by the Parties or Focus (as defined below). |
| **Sale Proceeds Carveout** | All proceeds from the Focus Sale in excess of the Initial Bond Trustee Recovery (the "Sale Proceeds Carveout") shall be paid to the Debtor's estate to, <u>first</u>, pay all allowed administrative expense claims of the Debtor's estate, <u>second</u>, to fund the Liquidating Trust (defined below), and <u>third</u>, to fund an initial distribution on account of allowed claims of current and/or former resident of The Harborside ("Resident Claims") pursuant to an Acceptable Chapter 11 Plan (defined below). |
| **Member Financial Contribution** | Upon the Effective Date, the Member shall incur the contingent obligation (contingent upon the occurrence of all Payment Conditions (defined below) or the waiver of such Payment Conditions by both the Member and ANH in writing, acting in their sole discretion, at which point such obligation shall be due and owing) to pay up to the lesser of (i) $46 million, (ii) the net proceeds of an Acceptable Nursing Home Sale (defined below), and (iii) the amount of such payment finally approved by the Supreme Court of the State of New York pursuant to the Regulatory Approvals (such lesser amount, the "Member Financial Contribution") in furtherance of the Member's and ANH's charitable missions. For the avoidance of doubt, the Member shall have no obligation to pay interest with respect to the Member Financial Contribution. |
| | In the event that the Member Financial Contribution will be less than $46 million, the Member shall provide at least 30 days' notice to the Liquidating Trustee and the Bond Trustee, or if the Liquidating Trust has not yet been formed, the Debtor, the Committee, the Ad Hoc Group and the Bond Trustee prior to paying such Member Financial Contribution. |
| | The proceeds of any payment on account of the Member Financial Contribution shall be remitted to the Liquidating Trust (unless not yet established, in which case to the Debtor to be held in trust for the benefit of the Liquidating Trust pending its establishment) and allocated as follows: |

---

[2] The Parties agree that the proceeds of any of the Debtor's assets that are not sold to Focus (collectively, the "Remnant Assets") shall be used to pay the expenses and the amounts set forth in the Approved Budget (as defined in the Bond Trustee's debtor-in-possession financing to be entered contemporaneously herewith), with the proceeds of all remaining Remnant Assets being applied to satisfy any outstanding liens or Diminution (as defined therein) claims of the Bond Trustee, then, on a pro rata basis, to all general unsecured creditors (including the Bond Trustee on account of its deficiency claim).

1.  $8.8 million, plus interest at a rate of 7.5% per year commencing from the consummation of the Focus Sale, paid to the Bond Trustee on account of the contributions and financing provided by the Bond Trustee in furtherance of the Focus Sale process and resolution of the Chapter 11 Case (the "<u>Bond Reimbursement Claim</u>"); and

2.  The remainder (*i.e.*, $46 million less the Bond Reimbursement Claim and less any credit due to the Member based on holders of Resident Claims that do not opt-in to the Member Financial Contribution) distributed pro rata on account of all Resident Claims who opt-in to the Member Financial Contribution pursuant to the opt-in procedures outlined below.

In the event the Member Financial Contribution is less than $46 million, or any other amounts are paid by the Member or ANH (or on their behalf) to, and accepted by, the Bond Trustee, the Liquidating Trustee or on account of any Resident Claim (an "<u>Alternative Payment</u>"), shall be split 75% for distribution pro rata on account of all Resident Claims and 25% to the Bond Trustee, provided that no Alternative Payment shall relieve the Member or ANH of any of their obligations under this Global Settlement Term Sheet, including but not limited to the payment of the entire amount of the Member Financial Contribution. This provision shall survive any Termination.

ANH shall contribute to the Member funds in the amount of the Member Financial Contribution (exclusively from the net proceeds of an Acceptable Nursing Home Sale, and only to the extent of such proceeds), solely to the extent such Member Financial Contribution becomes due and owing in accordance with this Global Settlement Term Sheet, not later than fifteen (15) days after such Member Financial Contribution becomes due and owing.

The Member shall hold such contribution from ANH in trust and shall as soon as practicable wire such trust funds to the Liquidating Trust (unless not yet established, in which case to the Debtor to be held in trust for the benefit of the Liquidating Trust pending its establishment), to be distributed in accordance with this Global Settlement Term Sheet.

Notwithstanding the foregoing, ANH may in its sole discretion choose to satisfy the Member Financial Contribution on behalf of the Member (to the extent it becomes due and owing) by method of direct payment from and to the extent of the proceeds of an Acceptable Nursing Home Sale to the Liquidating Trust (unless not yet established, in which case to the Debtor to be held in trust for the benefit of the Liquidating Trust pending its establishment) consistent with this Global Settlement Term Sheet and an Acceptable Chapter 11 Plan (defined below).

| | |
|---|---|
| | In the event of a bankruptcy filing by ANH, the Liquidating Trustee shall have standing to enforce on behalf of the Member ANH's obligations under this Global Settlement Term Sheet. |
| **ANH Performance Obligations** | ANH shall have no obligation under this Global Settlement Term Sheet to cause the occurrence of any of the Payment Conditions except to the extent specifically set forth in this section titled "ANH Performance Obligations."<br><br>ANH shall use commercially reasonable efforts to (i) close an Acceptable Nursing Home Sale and (ii) obtain the Regulatory Approvals such that the Member Financial Contribution is paid in full and as soon as possible.  The Parties acknowledge that ANH does not control the timing of the Regulatory Approvals generally, and has no control over the approval of the new operator by the New York Department of Health and the New York Public Health and Health Planning Council.<br><br>ANH shall provide bi-annual reports to the Liquidating Trustee, or, if the Liquidating Trust has not yet been formed, counsel to the Bond Trustee, the Committee and the Ad Hoc Group, commencing on or around June 1, 2025, pertaining to the status of the closing of an Acceptable Nursing Home Sale (and related Regulatory Approvals) and shall otherwise reasonably cooperate, upon request, with any inquiries from the Liquidating Trustee, or, if the Liquidating Trust has not yet been formed, counsel to the Bond Trustee, the Committee and the Ad Hoc Group, pertaining to the closing of an Acceptable Nursing Home Sale and/or satisfaction of any other ANH Performance Obligations.<br><br>In the event that the closing of the Current ANH Sale (defined below) does not occur and the related purchase agreements are terminated, ANH shall provide notice to the Liquidating Trustee within five (5) business days and shall as soon as possible (and in no event later than thirty (30) days thereafter) commence commercially reasonable efforts to effectuate an alternative Acceptable Nursing Home Sale such that the Member Financial Contribution is paid in full (an "<u>Alternative Transaction</u>"). ANH shall provide notice of any such Alternative Transaction to the Liquidating Trustee within five (5) business days after execution and delivery of the agreements that legally bind ANH to proceed with such an Alternative Transaction.<br><br>In the event the Member and ANH have jointly identified a pending litigation with respect to which they intend to exercise the Litigation Trigger (defined below), the Member and ANH shall notify the Liquidating Trustee, or, if the Liquidating Trust has not yet been formed, counsel to the Bond Trustee, the Committee and the Ad Hoc Group of the existence of such litigation and engage in good faith discussions regarding the merits of such pending litigation and any potential settlement with respect to such litigation.  If those discussions do not result in a resolution of such pending litigation, the Member and ANH shall provide sixty (60) days' written notice to the Liquidating Trustee, |

|  | or, if the Liquidating Trust has not yet been formed, counsel to the Bond Trustee, the Committee and the Ad Hoc Group of its intent to exercise the Litigation Trigger absent a resolution of such litigation on terms reasonably acceptable to the Member and ANH within such sixty (60) day period.<br><br>For the avoidance of doubt, and notwithstanding any other provision of this Global Settlement Term Sheet: (i) neither ANH nor the Member shall have any obligation to fund litigation in respect of (x) any dispute regarding an Acceptable Nursing Home Sale, or (y) obtaining the Regulatory Approvals, (ii) no Party has by reason of this Global Settlement Term Sheet any right to enforce any provision of any Acceptable Nursing Home Sale purchase agreements as a third party beneficiary or otherwise, (iii) no Party shall assert that any obligations under this Global Settlement Term Sheet constitute a lien or encumbrance on any assets (including any real property) of ANH in any respect; (iv) the Parties (other than ANH) acknowledge and agree that they shall not take any action that interferes with the timing of, or the occurrence or non-occurrence of, the closing of the Current ANH Sale or the related Regulatory Approvals; and (v) the Parties acknowledge and agree that any Acceptable Nursing Home Sale will require that ANH receive fair market value for the assets to be sold pursuant to Sections 510 and 511 of the New York Not-for-Profit Corporation Law. |
|---|---|
| **Payment Conditions** | "Payment Conditions" means each of the following conditions: (i) the Effective Date shall have occurred; (ii) the closing of an Acceptable Nursing Home Sale shall have occurred; (iii) any and all Regulatory Approvals shall have been obtained; and (iv) no Company Liability Event (as defined below) has occurred as of the date all other Payment Conditions are satisfied. |
| **Focus Sale** | The "Focus Sale" shall mean the sale of substantially all of the assets of the Debtor to Sr Hsg Acquisitions, LLC ("Focus"), pursuant to that certain Asset Purchase Agreement, dated January 22, 2025, and as amended on February 20, 2025 to, among other things, (i) eliminate any purchase price credits, and (ii) increase the purchase price consideration by $2 million to $82 million, between the Debtor and Focus (the "Focus APA").<br><br>The Parties, other than ANH, shall reasonably assist and cooperate in the closing of the Focus Sale, including the release of all liens, claims and encumbrances of the Bond Trustee and the termination of the Bonds and related bond documents.<br><br>For the avoidance of doubt, and notwithstanding any contrary provision in the Focus APA or otherwise, any claims or causes of action of the Debtor as of the date hereof that are contemplated to be released by the Debtor hereunder shall be released and shall not be sold, assigned, pledged or otherwise conveyed to Focus or any other party, including, |

| | |
|---|---|
| | without limitation, the Bond Trustee under the debtor-in-possession financing to be entered into contemporaneously herewith. |
| **Acceptable Nursing Home Sale** | An "<u>Acceptable Nursing Home Sale</u>" shall mean the sale of substantially all of the assets of ANH pursuant to the previously executed agreements dated as of December 18, 2020 and effective March 8, 2021, as amended, and certain related agreements (which is currently pending regulatory review and remains subject to a pending closing) (the "<u>Current ANH Sale</u>") or another sale transaction with respect to such assets. |
| **Regulatory Approvals** | "<u>Regulatory Approvals</u>" means all applicable regulatory and/or governmental agency approvals, including, without limitation, the Department of Health and Public Health and Health Planning Council approval of the new operator, and approval with respect to use or distribution of the proceeds of an Acceptable Nursing Home Sale pursuant to this Global Settlement Term Sheet (including, without limitation, the approval by the New York State Supreme Court on notice to the Office of the New York State Attorney General of the contribution to the Member contemplated by this Global Settlement Term Sheet). |
| **Company Liability Event** | "<u>Company Liability Event</u>" means any event, occurrence, circumstance or state of facts in which the Member, ANH or any of their Related Parties other than the Debtor become liable by Final Order for any material obligations owing to any person or entity arising out of or related to the Debtor or the Debtor's obligations under any legal theory, including, without limitation, contribution, indemnification, alter ego, veil piercing, substantive consolidation, joint tortfeasor liability, or otherwise. |
| **Final Order** | A "<u>Final Order</u>" shall mean an order which has not been modified, amended, reversed, vacated or stayed and as to which (A) the time to appeal, petition for certiorari, or move for a new trial, stay, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, stay, re-argument or rehearing shall then be pending or (B) if an appeal, writ of certiorari, new trial, stay, re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, stay, re-argument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be filed relating to such order, shall not cause an order not to be a Final Order. |

| | |
|---|---|
| **Liquidating Trust** | The Debtor shall seek to establish a liquidating trust for the benefit of unsecured creditors (the "Liquidating Trust"), pursuant to a chapter 11 plan reasonably acceptable to the Parties (an "Acceptable Chapter 11 Plan"), administered by a liquidating trustee (the "Liquidating Trustee"), who shall succeed to all of the rights of the Debtor, the Committee, the Ad Hoc Group and the Bond Trustee under this Global Settlement Term Sheet, including but not limited to the right to enforce the obligations of the Member and ANH under this Global Settlement Term Sheet, the right to terminate the Global Settlement Term Sheet, and the right to pursue any and all claims of the Debtor's bankruptcy estate expressly preserved and tolled pursuant to the terms of the Prior Settlement Term Sheet and this Global Settlement Term Sheet. |
| **Mutual Releases** | Upon the Effective Date, the Debtor and the Committee, on behalf of themselves and any of their respective successors and assigns, and on behalf of the Debtor's estate (collectively, "Estate Releasors"), hereby release any and all claims, demands, actions, causes of action or suits of any kind or nature whatsoever, whether known or unknown, fixed or contingent, which any of the Estate Releasors may now have or may hereafter have or claim to have against the other Parties hereto or any of their Related Parties (as defined below), as a result of, arising from, or in any other way relating to any and all matters involving or relating to the Debtor, other than any claims or rights arising under this Global Settlement Term Sheet.

Upon the Effective Date, the Member and ANH, on behalf of themselves and any of their respective successors and assigns (collectively, "Amsterdam Releasors"), hereby release any and all claims, demands, actions, causes of action or suits of any kind or nature whatsoever, whether known or unknown, fixed or contingent, which any of the Amsterdam Releasors may now have or may hereafter have or claim to have against the other Parties hereto or any of their Related Parties, as a result of, arising from, or in any other way relating to any and all matters involving or relating to the Debtor, other than any claims or rights arising under this Global Settlement Term Sheet, provided, however, that no holder of Resident Claim that has not opted-in to the Member Financial Contribution shall receive a release from the Amsterdam Releasors.

Upon the Effective Date, (i) the Bond Trustee, on behalf of itself and each holder of the Bonds, (ii) the Restricted Group, and (iii) any of their respective successors and assigns (collectively, "Bond Releasors"), hereby release any and all claims, demands, actions, causes of action or suits of any kind or nature whatsoever, whether known or unknown, fixed or contingent, which any of the Bond Releasors may now have or may hereafter have or claim to have against the other Parties hereto or any of their Related Parties, as a result of, arising from, or in any other way relating to any and all matters involving or relating to the Debtor, |

|  | other than any claims or rights arising under this Global Settlement Term Sheet.<br><br>"<u>Related Parties</u>" means, with respect to each Party, such Party's current and former affiliates, subsidiaries, members, managers, directors, officers, employees, agents, attorneys, advisors, and other related parties. |
|---|---|
| **Opt-In Resident Releases** | Each holder of a Resident Claim shall have the option to affirmatively opt-in to receive their proposed distribution under this Global Settlement Term Sheet in exchange for a release of all direct claims that individual may have against the Member, ANH, the Debtor and their respective Related Parties relating to The Harborside (the "<u>Opt-In Releases</u>"). Such opt-in election shall be made in connection with the confirmation of an Acceptable Chapter 11 Plan and the Opt-In Releases shall be effective upon the Effective Date.<br><br>Any holder of a Resident Claim that elects not to opt-in shall forfeit their right to receive any distribution from the Member Financial Contribution and shall not be required to release any claims against the Member, ANH, the Debtor and their respective Related Parties relating to The Harborside, and the Member Financial Contribution shall be reduced by the amount of such forfeited distribution. |
| **Stand-Down on Discovery and Litigation** | Upon the Execution Date and continuing until Termination (as defined below), the Debtor, the Bond Trustee, the Committee and the Ad Hoc Group shall refrain from continuing or conducting any further discovery or litigation targeted at the Member, ANH or any of their Related Parties. |
| **Tolling of Challenge Deadline** | Upon the Execution Date, the deadline for the Committee or the Bond Trustee (or the Liquidating Trustee as their successor) to bring a Challenge (as defined in the DIP Order),[3] and any other potential claim against the Member, ANH or any of their respective Related Parties, to the extent not previously expired or otherwise time barred, shall be automatically tolled (the "<u>Tolling</u>") until the earlier of (i) payment in full of the Member Financial Contribution, and (ii) sixty (60) days following Termination. For the avoidance of doubt, any claims previously tolled under the Prior Global Settlement Term Sheet shall continue being tolled uninterrupted hereunder. |
| **Mutual Obligations of Parties** | So long as a Termination has not occurred, each of the Parties agree to the following:<br><br>(i)  to support and take all steps reasonably necessary and desirable to consummate the transactions and undertakings contained in this Global Settlement Term Sheet, subject to the performance standards specifically set forth herein; |

---

[3] "<u>DIP Order</u>" means that certain Final Order (I) Authorizing the Debtor to Obtain DIP Contribution; (II) Granting Adequate Protection; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief [Docket No. 184] in the Chapter 11 Case.



| | |
|---|---|
| | (ii)    to reasonably assist and cooperate in preparing documentation and submitting evidence and legal support at any hearing to approve the Global Settlement Term Sheet and confirm an Acceptable Chapter 11 Plan; |
| | (iii)    with respect to the Parties other than ANH, to reasonably assist and cooperate in the closing of the Focus Sale and the release of all liens, claims and encumbrances of the Bond Trustee, including, but not limited to, the transfer of the deed to the Real Property (as defined in the Focus APA) to Focus free and clear of the Bond Trustee's liens, claims and encumbrances and the termination of the Bond Trustee's mortgage encumbering the Real Property; |
| | (iv)    with respect to the members of the Restricted Group, to vote, or cause to be voted, in favor the Acceptable Chapter 11 Plan by delivering duly executed and completed ballots accepting the Plan and not opting out of any releases or exculpations provided under the Acceptable Chapter 11 Plan (or, to the extent required by the ballot, affirmatively opting in to such releases and exculpations); |
| | (v)    with respect to the Parties other than ANH, whose obligations are otherwise set forth under the "ANH Performance Obligations" section of the Global Settlement Term Sheet, to reasonably assist and cooperate in supporting ANH's efforts to close the Current ANH Sale and obtain the Regulatory Approvals; and |
| | (vi)    in the event that the Current ANH Sale does not close, with respect to the Parties other than ANH, whose obligations are otherwise set forth under the "ANH Performance Obligations" section of the Global Settlement Term Sheet, to reasonably assist and cooperate in supporting ANH's efforts to pursue and close a substantially similar transaction that constitutes an Acceptable Nursing Home Sale. |
| **Termination** | After the Execution Date, and prior to payment of the Member Financial Contribution, the Global Settlement Term Sheet may be terminated only as described below (a "<u>Termination</u>"), effective one (1) business day after transmission of written notice to the Parties delivered by overnight courier with copy by electronic mail:<br><br>• By the Liquidating Trustee, or, if the Liquidating Trust has not yet been formed, the Debtor, the Committee, the Ad Hoc Group, and the Bond Trustee jointly, if, in the reasonable judgment of such terminating party, the Payment Conditions cannot be satisfied and therefore the Member Financial Contribution will |

|  | not be paid in accordance with this Global Settlement Term Sheet; |
|  | • By the Liquidating Trustee, or if the Liquidating Trust has not yet been formed, the Debtor, the Committee, the Ad Hoc Group and the Bond Trustee jointly, if the Member Financial Contribution following the closing of an Acceptable Nursing Home Sale will be less than $46 million; |
|  | • By the Member and ANH jointly, if there is pending litigation that in their reasonable judgment could give rise to a Company Liability Event (the "<u>Litigation Trigger</u>"), subject to compliance with the ANH Performance Obligations relating to such Litigation Trigger; or |
|  | • By any Party, if, another Party hereto is determined by Final Order of a court of competent jurisdiction to have materially breached its obligations hereunder. |
|  | Upon Termination, this Global Settlement Term Sheet, including all obligations and releases provided herein, as well as any individual releases provided by holders of Resident Claims, shall cease to be binding on any of the Parties in any respect and shall be deemed void *ab initio*, provided that (i) the Tolling shall remain effective in accordance with this Global Settlement Term Sheet, and (ii) if the Focus Sale has closed, the Bond Trustee's consent to the Focus Sale, free and clear of the Bond Trustee's liens, claims or other encumbrances, shall remain effective and may not be withdrawn, and the Focus Sale may not be collaterally attacked or challenged in any respect. |
|  | Upon Termination, the Liquidating Trustee, or, if the Liquidating Trust has not yet been formed, the Debtor, the Committee, or the Ad Hoc Group shall provide each holder of a Resident Claim who executed an Opt-In Release in connection with this Global Settlement Term Sheet with written notice of such Termination. |
| **Remedies / Specific Performance** | The Parties (including the Liquidating Trustee, when applicable) agree that (i) they will be entitled to an injunction or injunctions, specific performance or equitable relief to enforce specifically the terms and provisions of the Global Settlement Term Sheet without proof of damages or otherwise (in addition to any other remedy to which the parties are entitled at law or in equity), (ii) the election to pursue an injunction, specific performance or other equitable relief will not restrict, impair or otherwise limit the Parties from, in the alternative and as applicable, seeking to terminate the Global Settlement Term Sheet as contemplated herein, and (iii) the right of specific performance is an integral part of the Global Settlement Term Sheet and without that right, the Parties would not have entered into the Global Settlement Term Sheet. Each of the Parties agrees that it will not oppose the granting of an injunction, specific performance and other equitable relief on the |

|  | basis that the other Parties thereto have an adequate remedy at law or an award of specific performance is not an appropriate remedy for any reason at law or equity.  Notwithstanding the foregoing, only the Liquidating Trustee and the Member shall have standing to enforce or seek remedies with respect to ANH's obligations set forth above in the sections titled "Member Financial Contribution" and "ANH Performance Obligations" and ANH reserves all defenses available under applicable law with respect to the alleged breach of any of its obligations under this Global Settlement Term Sheet.  For the avoidance of doubt, no Party shall have the right to enjoin an Acceptable Nursing Home Sale that has been approved by the Supreme Court of the State of New York pursuant to Sections 510 and 511 of the New York Not-for-Profit Corporation Law. |
|---|---|
| **Consent to Jurisdiction** | The Member and ANH consent to the exclusive jurisdiction of the Bankruptcy Court solely for the limited purposes of enforcement of the obligations under this Global Settlement Term Sheet and resolution of any disputes related thereto, including the injunctive and specific performance relief contemplated herein, except to the extent that disposition of the proceeds of an Acceptable Nursing Home Sale may be subject to the jurisdiction of the Supreme Court of the State of New York for New York County. |
| **Amendments** | No amendment to the terms hereof may be made without the consent of each of the Parties in writing, and, to the extent necessary, approval of the Bankruptcy Court. |
| **Prohibition on Assignment** | None of the rights of any Party hereunder may be assigned, except to the Liquidating Trustee as contemplated hereunder. |
| **No Representations and Warranties** | The Parties make no representations or warranties under this Global Settlement Term Sheet, and expressly disclaim any reliance on any oral representations or warranties made in connection herewith. |

**<u>EXHIBIT C</u>**

**Notice of Confirmation and Effective Date**

Gregory M. Juell
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: gregory.juell@us.dlapiper.com

Rachel Nanes (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131-5341
Telephone: (305) 423-8500
Facsimile: (305) 437-8131
Email: rachel.nanes@us.dlapiper.com

James P. Muenker (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
Email: james.muenker@us.dlapiper.com

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1] | Case No. 23-70989 (AST) |
| Debtor. | |

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE**
**DEBTOR'S AMENDED PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF**
**THE BANKRUPTCY CODE, (II) OCCURRENCE OF THE EFFECTIVE DATE,**
**AND (III) RESIDENT DISTRIBUTION RECORD DATES**

**PLEASE TAKE NOTICE** that an order (the "Confirmation Order") of the Honorable Alan S. Trust, United States Bankruptcy Judge for the Eastern District of New York, confirming the *Debtor's Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated March 27, 2025 [Dkt. No. 1023] (including all exhibits thereto and as the same may be further amended, modified or supplemented from time to time, the "Amended Plan"), was entered on May [●], 2025 [Dkt. No. ●].  Unless otherwise defined in this notice, capitalized terms used herein shall have the meanings ascribed to them in the Amended Plan and Confirmation Order.

---

[1]      The last four digits of the Debtor's federal tax identification number are 1764.  The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Amended Plan occurred on [●], 2025.

**PLEASE TAKE FURTHER NOTICE** that the Amended Plan and its provisions are binding on the Debtor, the Liquidating Trustee and any holder of a Claim against or Interest in the Debtor, as provided in the Amended Plan.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in the Confirmation Order, the deadline to file a request for payment of an Administrative Expense Claim must be filed with the Bankruptcy Court on or before the first Business Day that is thirty (30) days after the Effective Date (unless such request for payment or Proof of Claim has already been filed with the Bankruptcy Court).

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise provided in orders entered by the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court and served on counsel to the Debtor or the Liquidating Trustee on or before the first Business Day that is thirty (30) days after the earlier of (i) the date of rejection of such Executory Contract or Unexpired Lease under an order entered by the Bankruptcy Court and (ii) the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that, a Holder of a Resident Claim must be a Releasing Party to receive a distribution under the Amended Plan.  Any Holder of a Resident Claim that did not properly opt-in to the Releases prior to the Voting Deadline who wishes to become a Releasing Party must agree to the Releases by executing a release agreement acceptable to the parties to the Focus Sale Global Settlement Term Sheet (the "Release Agreement").  Holders of Resident Claims can request a Release Agreement from the Liquidating Trustee.  The date as of which a Holder of a Resident Claim must have become a Releasing Party to receive the Initial Pre-Termination Resident Distribution or Initial Post-Termination Resident Distribution shall be [●], 2025 (the "Initial Resident Distribution Record Date").  The date as of which a Holder of a Resident Claim must have become a Releasing Party to receive the Subsequent Resident Distribution shall be [●], 202[●] (the "Subsequent Resident Distribution Record Date").  The Initial Resident Distribution Record Date and Subsequent Resident Distribution Record Date may be extended by agreement among the Liquidating Trustee, ACCHS and ANH.  **Any Holder of a Resident Claim that opted in to the Releases under a properly submitted Ballot shall not be required to take any further action unless contacted by the Liquidating Trustee.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Amended Plan, Confirmation Order, and other documents filed in the above-captioned case may be obtained by either accessing (i) the website established by Epiq Corporate Restructuring, LLC, the Debtor's noticing and claims agent, at https://dm.epiq.com/TheHarborside, free of charge, or (ii) the Bankruptcy Court's website at www.nyeb.uscourts.gov.  A PACER password is required for accessing a document from the Court's website.  Requests may also be made to counsel for the Debtor using the contact information below.

Dated: [●], 2025
   New York, New York

**DLA PIPER LLP (US)**

 */s/ DRAFT*    
Gregory M. Juell
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: gregory.juell@us.dlapiper.com

- and -

Rachel Nanes (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8500
Facsimile: (305) 437-8131
Email: rachel.nanes@dlapiper.com

- and -

James P. Muenker (admitted *pro hac vice*)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
Email: james.muenker@us.dlapiper.com

*Counsel for the Debtor and Debtor in Possession*